CLARENCE WILLIAM ANDERSON, EMPLOYEE v. A. M. SMYRE MANUFAC-
TURING COMPANY, EMPLOYER, AND LUMBERMENS MUTUAL IN-
SURANCE COMPANY, CARRIER

No. 8110IC220

(Filed 20 October 1981)

1. **Master and Servant § 96.5— workers' compensation—scope of appellate court's review**

    The appellate court's review in a workers'. compensation proceeding is simply to determine whether the Industrial Commission's findings are supported by any competent evidence and whether its subsequent legal conclusions are justified by those findings.

---

Anderson v. Smyre Manufacturing Company

---

2. **Master and Servant § 68— occupational disease—evidence supporting total disability**

    Evidence that plaintiff, age 58, had a fifth grade education and had no training to do any work other than textile work; that prior to his employment in textile mills, plaintiff had no lung disease or breathing difficulties; that during his employment he developed respiratory problems; that plaintiff was diagnosed as having byssinosis; and that he was 50% to 70% disabled for impairment and totally disabled to perform his former textile employment was evidence supporting the Commission's findings and conclusion that plaintiff is totally disabled from an occupational disease.

APPEAL by defendants from North Carolina Industrial Commission. Opinion and award filed 17 October 1980. Heard in the Court of Appeals 25 September 1981.

In this appeal from the North Carolina Industrial Commission's (Commission) award of benefits to a 58-year-old byssinosis claimant, the sole issue is whether the evidence supports the Commission's findings and conclusions.

In an opinion and award entered 12 December 1979, Deputy Commissioner Christine Denson found and concluded that plaintiff had contracted byssinosis as a result of employment with A. M. Smyre Manufacturing Company (defendant) and that plaintiff was *totally* disabled as a result of byssinosis. From an award of benefits, defendant appealed to the Commission. The Commission adopted as its own the decision of Deputy Commissioner Denson and affirmed the award of benefits. Defendant appeals contending that the Commission erred in finding and concluding that plaintiff was totally and permanently disabled.

*Hedrick, Feerick, Eatman, Gardner & Kincheloe, by Richard T. Feerick, for defendant appellants.*

*Fredrick R. Stann for plaintiff appellee.*

BECTON, Judge.

Defendant argues that compensation may be awarded only to the extent that a disability results from an occupational disease and that since there is evidence that plaintiff could work at some occupation, compensation (a) should have been apportioned, or (b) should have been based on the loss or injury to an organ (lungs)—i.e., on the percentage of predicted lung function loss.

Considering the scope of appellate review of an award made by the Commission and the facts in this case, we are, as was the Commission, persuaded that the award of benefits to the plaintiff should be affirmed.

SCOPE OF REVIEW

[1] The Commission's award is conclusive and binding on us as to all questions of fact. Our review is simply to determine whether the Commission's findings are supported by any competent evidence and whether its subsequent legal conclusions are justified by those findings. *See Barham v. Food World,* 300 N.C. 329, 266 S.E. 2d 676 (1980); *Walston v. Burlington Industries,* 49 N.C. App. 301, 271 S.E. 2d 516 (1980).

FACTS

Plaintiff worked in card rooms of cotton mills from 1923 or 1924 until 1978. Card rooms are considered high risk areas for contracting byssinosis.[1] Plaintiff began working for defendant in November, 1977, but was forced to retire in May 1978 because of respiratory difficulties. Plaintiff had first experienced breathing difficulties about ten years before he began working for defendant, and at a time when he was working at Groove Thread, another cotton mill. As pointed out by the plaintiff in his brief, evidence was also offered at the hearing that: (1) plaintiff, age 58, has a fifth grade education; (2) prior to his employment in cotton textile mills, plaintiff had no lung disease or breathing difficulties; (3) plaintiff had a light smoking history[2]; (4) during his employment, plaintiff developed respiratory symptoms of shortness of breath, chest tightness, and a cough with sputum production; (5) Dr. Fred T. Owens, Jr., a medical expert in the field of lung disease, who serves on a panel of pulmonary specialists, examined

1. Dr. Cates testified: "I would consider a card room to be what is called a highest [sic] risk area for someone to have byssinosis." Dr. Owens testified: "A card room is a higher risk [area] than other areas but all areas are a risk for byssinosis."

2. While there appears to be a hearsay problem in Dr. Cates' testimony indicating that another doctor took a medical history (which was not part of plaintiff's medical records) suggesting that plaintiff smoked two to three packs of cigarettes daily over a 40-year period, the Commission was free to accept as a fact the medical history taken by Dr. Owens that plaintiff smoked approximately 1/3 to 1/2 pack of cigarettes per day over a seven-year period.

the plaintiff and disgnosed his occupational disease as byssinosis; (6) plaintiff's last injurious exposure to the hazards of cotton dust was at his employment with defendant; (7) plaintiff had not done, and had no training to do, any work other than textile work; (8) Dr. Owens opined that "six months exposure, at the end of [plaintiff's cotton mill] career, would constitute injurious exposure;" and (9) Dr. Owens considers the plaintiff to be 50% to 70% disabled using the AMA criteria for impairment and totally disabled to perform his former textile employment.[3]

LAW

[2]  The controlling statute is G.S. 97-53(13) which deems an occupational disease to be:

> Any disease, . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

This statute, then, does not require the conditions of employment to be the exclusive cause of the disease. Indeed, our Supreme Court in *Booker v. Medical Center*, 297 N.C. 458, 472, 256 S.E. 2d 189, 198 (1979) said: "[a] disease is 'characteristic' of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question." *See also Humphries v. Cone Mills*, 52 N.C. App. 612, 279 S.E. 2d 56 (1981). As recently stated by our Supreme Court in *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981), to be entitled to an award for disablement resulting from an occupational disease covered by G.S. 97-53(13), a claimant must establish:

---

3. Dr. Owens testified: I stated that I believe that Mr. Anderson is significantly impaired, 50% to 70% impaired, relative to a person of his peers and objective date of the pulmonary function studies indicate, with a FEV of less than 55% of predicted, he would have difficulty with his daily activities as mentioned above, climbing steps, et cetera.

In my opinion, Mr. Anderson should never be exposed again to any sort of dust, particularly cotton dust. With his degree of breathing impairment I believe that he could not perform physically his previous job even if it was dust free. Mr. Anderson would not be able to perform any significant manual labor. He may be able to perform a sedentary type occupation. . . . [H]e would be completely disabled from performing [his former employment] because he has byssinosis in my opinion.

(1) that [his] disablement *results from an occupational disease* encompassed by G.S. 97-53(13), *i.e.*, an occupational disease due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment as distinguished from an ordinary disease of life to which the general public is equally exposed outside of the employment; and (2) the extent of the disablement *resulting from* said occupational disease, *i.e.*, whether [he] is totally or partially disabled *as a result of the disease.*

304 N.C. at 12, 282 S.E. 2d at 466-67. (Emphasis in original.) The claimant is entitled to compensation for total disability if the disablement resulting from the occupational disease is total.

In the case *sub judice* there is expert medical testimony that plaintiff's six months exposure to the hazards of cotton dust at defendant's plant was injurious and that plaintiff was permanently and totally disabled as a result of byssinosis. The Commission's findings and conclusions are supported by the evidence and are binding on us.

Moreover, in further response to defendant's contention that *plaintiff was not totally disabled*—i.e., "he could work in some employment away from the exposure to cotton dust"—the case of *Mabe v. Granite Corporation,* 15 N.C. App. 253, 189 S.E. 2d 804 (1972) is instructive. In *Mabe* we said:

The Commission's findings of fact are sufficient to establish that plaintiff is fully incapacitated because of silicosis to earn wages through work at hard labor, which is the only work he is qualified to do by reason of his age and education.

. . .

Defendant contends that elements of age and poor education are factors which are beyond the control of an employer and cannot be considered in determining an employee's disability. The answer to this is that an employer accepts an employee as he is. If a compensable injury precipitates a latent physical condition, such as heart disease, cancer, back weakness, and the like, the entire disability is compensable and no attempt is made to weigh the relative contribution of the accident and the pre-existing condition. 2 Larson,

Workmen's Compensation Law, § 59.20, p. 88.109. By the same token, if an industrial disease renders an employee actually incapacitated to earn any wages, the employer may not ask that a portion of the disability be charged to the employee's advanced age and poor learning on the grounds that if it were not for these factors he might still retain some earning capacity.

*Id.* at 255-56, 189 S.E. 2d at 806-07.

In this case, we find no evidence of any disability other than plaintiff's disabling occupational lung disease. Consequently, there is no need to apportion any loss or injury to a percentage of lung function loss as suggested by defendant. The recent decision of *Morrison v. Burlington Industries* does not apply to the facts of this case.

For the foregoing reasons, the decision and award of the Commission is

Affirmed.

Judges MARTIN (Robert M.) and MARTIN (Harry C.) concur.