**Maudrie REVES,**
**Claimant–Employee–Respondent,**

v.

**KINDELL'S MERCANTILE CO., INC.,**
**Employer–Appellant,**

**and**

**American States Insurance Company,**
**Insurer–Appellant.**

**No. 16892.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 23, 1990.

Robert M. Ramshur, Ramshur & Goforth, P.C., Piedmont, for claimant-employee-respondent.

A.M. Spradling, II, Spradling & Spradling, Cape Girardeau, for appellants.

PER CURIAM:

The Labor and Industrial Relations Commission awarded respondent Maudrie Reves workers' compensation benefits for permanent total disability. Kindell's Mercantile Co., Inc. and American States Insurance Company appeal.

The employee was injured on December 28, 1985, when she fell while carrying a box of Christmas decorations down basement steps on the premises of her employer in Ironton, Missouri. The only issues before the Labor and Industrial Relations Commission and here are the nature and extent of her disability resulting from that accident.

The chief administrative law judge who initially heard this matter awarded the employee benefits based on permanent partial disability of 50% of the body as a whole. The Commission modified that award by giving the employee benefits based on permanent total disability.

■ Review of the Commission's decision is limited to a determination of whether its "findings are authorized by law and supported by competent and substantial evidence on the whole record." *Roby v. Tarlton Corp.*, 728 S.W.2d 586, 587 (Mo.App. 1987). The evidence is examined in the light most favorable to the findings of the Commission and its decision, accepting all reasonable inferences therefrom and disregarding all unfavorable evidence. *Id.* The Commission judges the credibility of witnesses. *Malcom v. La–Z–Boy Midwest Chair Co.*, 618 S.W.2d 725, 726 (Mo.App. 1981).

The appellants present three points claiming error in regard to the award. Those contentions are discussed in the order presented.

I

■ In appellants' first point relied on, they assert that the "Commission erred as a matter of law in modifying the award of disability from permanent partial disability to permanent total disability as the case was tried and submitted on the theory of permanent partial disability, and the Commission is bound to follow that theory."

This argument is premised on the statement by the administrative law judge at the commencement of the hearing that "[o]ur issue is nature and extent of permanent partial disability." Appellants contend that the Commission is restricted in its findings as to the theory of disability presented by the parties, citing *Gordon v. Chevrolet–Shell Division of General Motors Corp.*, 269 S.W.2d 163, 170 (Mo.App. 1954), and *Vogt v. Lambert Pharmacal Co.*, 218 S.W.2d 788, 791 (Mo.App.1949).

Assuming, but not deciding that the Commission is so limited, this point has no merit. The record does not reflect that the matter was heard only to determine the nature and extent of permanent partial disability. The judge said:

"Our issue is nature and extent of permanent partial disability. Do the parties have any objection if I receive Claimant's A and B on the front end?"

The parties were not asked to agree on what the issues were and did not. "Claimant's A and B" were claimant's exhibit A and exhibit B. Exhibit A was medical records of the employee, one of which contained a "Disability Evaluation". It was signed by a medical doctor and stated that the employee "is permanently and totally disabled to do any type of employment." Exhibit B was a deposition of that doctor in which he testified that the employee was "permanently and totally disabled to do any type of employment."

A deposition of a medical doctor who had treated the employee was offered by appellants and received by the administrative law judge. It reflects the following:

Q [Albert Spradling III, attorney for appellants] Do you have an opinion, Doctor, based on reasonable medical certainty, whether or not Mrs. Reves, at any point in time after her surgery, could have returned to gainful employment, that is, be able to function in an employment situation?

A That, of course, would depend on the employment situation. There are people who are paralyzed in all extremities and earn a living painting Christmas cards with their teeth. She would not

have been able to do heavy physical labor before the accident. I don't recall what kind of work she had done before the accident.

Q Assuming she was a store clerk person running a cash register, doing some sort of inventory work, handling small—

A I expect she might have been able to, for limited periods of time with very limited activity. That would have taken a very understanding employer, I think.

\* \* \* \* \* \*

Q [Robert Ramshur, attorney for employee] Now, your last visit with her was April 28, 1988, where you did again examine her for purposes of giving some evaluation of her disabilities; your evaluation of her was as a whole person, not just the hand or to the deltoid on the left side, is that correct?

A Yes.

Q. In other words, how her residuals from her injury affect her as an entire person, as an employable person?

A It was attempting to do that.

Q I have a copy, of course, of the report and the notes of April 28, 1988, Doctor, and in that report you say that looking at the person as a whole her disability may be as high as eighty to a hundred percent?

A If one includes looking at it from a point of view, is someone actually likely to employ her, given age, general condition, and these deficits.

Q Then you would say that would be your opinion considering those factors?

A Yes.

The evidence that the employee was permanently and totally disabled came in without any objections. Following the judge's findings, the application for review filed by the employee stated that she should be found "permanently and totally disabled". This was one of the contested issues. The Commission did not go beyond the theory of disability presented and contested by the employee and the employer and insurer. Point I is denied.

## II

For their second point, appellants state that the award was erroneous and not supported by competent evidence because the Commission found that the employee's age was a significant factor in determining whether she was totally disabled. The employee was born on January 7, 1923. Appellants assert that the definition of total disability, § 287.020(7), RSMo 1986, does not contemplate age as a factor in determining total disability and that there was no evidence "to find a 66 year old woman who had had a cervical laminectomy would be unable, as a result of her advanced age, to find a job in the labor force, as all evidence and inferences were based on speculation and conjecture."

Section 287.020(7), RSMo 1986, defines "total disability" as "inability to return to any employment and not merely ... inability to return to the employment in which the employee was engaged at the time of the accident." Decisions interpreting this statute state that "inability to return to any employment" means that the employee is unable to perform the usual duties of the employment after consideration in the manner that such duties are customarily performed by the average person engaged in such employment. *Kowalski v. M–G Metals and Sales, Inc.*, 631 S.W.2d 919, 922 (Mo.App.1982).

■ Any employment means any reasonable or normal employment or occupation and it is not necessary that the employee be completely inactive or inert. *Id.* The central question is whether any employer in the usual course of business would reasonably be expected to employ the employee in that physical condition. *Id.*

■ Appellants are incorrect when they say that age cannot be considered. *Kenter, Missouri Workers' Compensation (1989)*, states in Section 7:7.

The judicial interpretation of this definition [total disability] has been liberalized in favor of the employee. It is not necessary for the employee to be completely inactive or inert in order to meet the definition of being permanently and totally disabled. The court will look at the employee's age and the work in which he has experience and will ask: Given this employee's age, could he be considered for another type of job? Given his physical (or mental) condition, could anyone be expected to employ this person?

Various cases mentioned the age of an employee. *Kowalski* states that "[a]t his age it would be unusual for an employer to consider plaintiff for another type of job." 631 S.W.2d at 922. Certain jurisdictions have expressly said that age is one of the factors to be considered in determining employability. *Hilyard Drilling Co. v. Janes,* 462 So.2d 942, 943 (Ala.Civ.App.1985); *Allen v. Metro Contract Services,* 421 So.2d 1289, 1292–1293 (Ala.Civ.App.1982); *Anderson v. A. M. Smyre Mfg. Co.,* 54 N.C.App. 337, 283 S.E.2d 433, 435–436 (1981).

In determining disability under the Longshoremen's and Harbor Workers' Compensation Act federal courts have stated that age is one of the factors to be considered. *Fleetwood v. Newport News Shipbuilding & Dry Dock Co.,* 776 F.2d 1225, 1227 n. 2 (4th Cir.1985); *Odom Construction Co. v. U.S. Dept. of Labor,* 622 F.2d 110, 115 (5th Cir.1980), cert. denied 450 U.S. 966 (1981); *Maryland Shipbuilding and Drydock Co. v. Director Office of Workers Compensation Programs,* United States Dept. of Labor, 618 F.2d 1082, 1085 (4th Cir.1980); *Diamond M. Drilling Co. v. Marshall,* 577 F.2d 1003, 1005 (5th Cir.1978).

Cases in Missouri and elsewhere make note of the age of the employee when discussing permanent total disability. See *Vogel v. Hall Implement Co.,* 551 S.W.2d 922, 926–927 (Mo.App.1977); *Groce v. Pyle,* 315 S.W.2d 482, 485 (Mo.1958); *Congoleum Nairn v. Brown,* 158 Md. 285, 148 A. 220, 221, 67 A.L.R. 780, 782 (1930); *Brooks v.*

*Hobbs Municipal Schools,* 101 N.M. 707, 688 P.2d 25, 30 (1984); *Webb v. Pauline Knitting Industries,* 78 N.C.App. 184, 336 S.E.2d 645, 647 (1985).

Citing § 213.010(2), (5), (8), (13), RSMo 1986, appellants contend that as discrimination by age is illegal, the Commission should not consider it. That discrimination by age may be illegal, does not mean that it never occurs. To not consider an employee's age would ignore reality.

By statute, age is a factor expressly to be considered in determining the amount of maintenance in a dissolution matter. § 452.335.2(7), RSMo Supp.1990. Previous to that section including age, age was not expressly referred to in the statute providing for maintenance. See § 452.070, RSMo 1969, repealed 1973 Mo.Laws 470. Nevertheless, by case law it was to be considered. See *Simon v. Simon,* 248 S.W.2d 560, 568 (Mo.1952); *Shapiro v. Shapiro,* 238 S.W.2d 886, 891 (Mo.App.1951).

Direct evidence, to find that the employee would not be able to get a job, was not necessary as the Commissioners could use their experience and common knowledge to make that determination based upon the factors present. However, there was evidence related to this question. As earlier mentioned, appellants offered the testimony of a medical doctor who had treated the employee. Besides the testimony earlier quoted which discussed her employment prospects, that deposition included the following:

Q [Albert Spradling III, attorney for appellants] The fatigue factor, Doctor, is that circumstances that an older person of Mrs. Reves' age would be experiencing, is it more appropriate for an older person to be experiencing fatigue factor than a younger person under the same conditions?

A It's certainly more common for an older person, yes.

\*    \*    \*    \*    \*    \*

Q So she has—in your opinion, has she sustained some disability as a result of this injury?

A  Yes.

Q  Have you quantified that particular disability into a percentage?

A  I have attempted to do so.  I have a great deal of difficulty with percentages in this sort of situation where they're bound to be quite arbitrary.

Q  Is that percentage that you have again computed, I believe recently, thirty percent of the person as a whole?

MR.  RAMSHUR [employee's attorney]: Object to the leading form.

A  That is what I last ended up with comparing, essentially leaving out the fact that she is not large and strong to begin with.  There is the question of how bad these injuries are, and the question of—given what she's left with, whether anyone would actually hire her.

Q  (by Mr. Spradling)  And that would be based on her age?

A  Based on a number of things, including the degree of disability related to the injury, and age, and general stamina, and the fact that she is not a Nobel Prize winner, or has, as far as I know, any special qualifications or skills.

Point II is denied.

### III

■ For their third point appellants state that the Commission erred in not suspending the permanent total disability payments after the employee's 65th birthday "as respondent was drawing her normal social security retirement benefits, and she had intended to voluntarily retire from the general labor market on her 65th birthday."

In argument under this point, appellants refer to testimony of the employee during her direct examination.  That testimony was as follows:

Q  Now, on the date that you were injured, what was your age then?

A  I was sixty-two.  I had a birthday in January, and I was sixty-two at that time.

Q  Many people who are sixty-two—sixty-six years old are what we call retired.

A  That was something I hadn't planned on doing.  I had no idea of retiring or at least I didn't intend to retire until I was sixty-five years old, and this has really taken away from the retirement.  I mean tours that I would like to take with groups of people, I can't dare do that because that's traveling eight hours a day possibly, and a lot of walking and that, and even if I could endure it for one day, you are with the group and you can't come home.  You have to continue.  Lots of things I had planned on doing in retirement, I'm unable to do.

Appellants emphasize that in her testimony the employee indicated that she was going to retire when she was 65 years old.  Apparently, appellants' counsel did not interpret it that way initially when he heard her testimony, because shortly thereafter during his cross-examination the following occurred:

Q  Mrs. Reves, you said a minute ago in your testimony that at age sixty-two you had not contemplated retiring at sixty-five, is that correct?

A  No, I hadn't made any definite plans.  I had not made plans whatsoever on retirement because I dreaded that day.

Q  Have you now retired?

A  Well, I have been forced to retire, let's put it that way.  I have retired and I'm drawing my social security, yes.

Q  And when did you start drawing your social security?

A  I think I started—I didn't sign up the first year that I was off.  I started drawing at age sixty-six.  I started drawing social security in the year of '87.

Q  You didn't draw social security disability, but you are drawing normal retirement?

A  Right.  I didn't apply for my social security the first year because I still had it in my mind that I was going to go back to work, although my husband said I wasn't.

Section 287.200.1 states that compensation for permanent total disability is to be

paid "for the lifetime of the employee". Appellants rely on § 287.200.2, RSMo 1986, providing that suspension of that compensation shall occur "during the time in which the employee is restored to his regular work or its equivalent." Appellants contend that "[t]he receipt of social security retirement benefits should equate to returning to regular work *or its equivalent*" (emphasis in appellants' brief).

In construing this statute, we keep in mind that the primary rule of statutory construction is to ascertain the legislature's intent from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning. *State ex rel. Tate v. Turner*, 789 S.W.2d 240, 241 (Mo.App.1990).

Retirement is not equivalent to returning to regular work. It is not working, although often by choice of the employee. Had the legislature intended to suspend benefits upon retirement it could have said so. The plain language of the statute is contrary to appellants' contention.

Moreover, states that have considered similar questions have decided contrary to appellants' contention. *Hilyard,* supra, states that retirement may not be considered to reduce the amount or duration of a disability compensation award. 462 So.2d at 943. See also *Meyers v. Walsh Construction Co.*, 12 A.D.2d 371, 211 N.Y.S.2d 590, 591 (1961).

Under this point, appellants cite only *McQuade v. Vahlsing, Inc.*, 377 A.2d 469 (Me.1977). It does not aid them. It did not decide that one who is totally and permanently disabled and draws Social Security should have their worker's compensation benefits suspended. The court states that receipt of Social Security benefits does not "necessarily" mean the employee voluntarily withdrew from the labor market. 377 A.2d at 471. Point III is denied.

The award is affirmed.

All concur.