The evidence tending to support plaintiffs claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence.Doggett v. South Atl. Warehouse Co., 212 N.C. 599, 194 S.E. 111 (1937), cited with approval in Adams vs. AVX Corporation, 349 N.C. 676,509 S.E.2d 411 (1998).
In this case, Dr. Powell and Dr. Hubbard stated their opinion to a reasonable degree of medical certainty that plaintiff suffered from infectious osteomyelitis along with his other ailments of the foot and that the nail puncture described by plaintiff caused the infectious osteomyelitis. Even though Dr. Hubbard testified that the amount of necrosis visible on the x-ray report indicated that the necrotic process existed before May 2, 1998, the weight of the evidence suggests that the nail puncture was the cause of the infectious osteomyelitis. Dr. Powell and Dr. Hubbard were of the opinion that a patient could have both infectious osteomyelitis and Charcot joint. The diagnoses are not mutually exclusive. In fact, Dr. Romash stated that a nail puncture could cause Charcot foot depending upon the impact when stepping upon the nail. Dr. Blumberg, however, does not believe that an "acute process can cause Charcot foot.
Dr. Hubbard explained that diabetics have diminished sensation in the bottom of the foot, which would make plaintiff a prime candidate to have a puncture in his foot and "just kind of blow it off," not be aware of it. He further explained that there is a "high degree of medical probability that the infection to plaintiffs foot came from a "nail puncture".
Dr. Blumberg testified that plaintiffs Charcot foot was a preexisting condition. If this is so, the medical evidence supports a finding that the nail puncture accelerated a preexisting condition. In cases where there is evidence of a preexisting condition, our Courts have ruled in favor of compensability. In Anderson v. Northwestern Motor Co.,233 N.C. 372, 64 S.E.2d 265 (1951) the North Carolina Supreme Court addressed the issue of disability compensation where a prior condition and a work-related injury combine to disable a claimant. The Court held that, where the claimant . . . "suffers a personal injury by accident arising out of and in the course of his employment, and such injury materially accelerates or -aggravates the preexisting disease or infirmity and thus proximately contributes to the death or disability of the employee, the injury is compensable, even though it would not have caused death or disability to a normal person. Id.
Whether the injury materially aggravated the existing infirmity is once again to be determined with reference to the claimants capacity-or incapacity for work. Wilder v. Harbour Boat Works, 84 N.C. App. 188,352 S.E.2d 690 (1987). Just as a medical disability rating may be apportioned between two causes, so may the degree of incapacity to work be a function of two completely separate causes. Id. at 195. As Judge/later Justice, Britt noted in Pruitt v. Knight Publishing Co.: "There is a distinction between a pre-existing impairment independently producing all or part of final disability and a preexisting condition acted upon by a subsequent aggravating injury which precipitates disability.27 N.C. App. 254, 218 S.E.2d 876 (1975), revd on other grounds,289 N.C. 254, 221 S.E.2d 355 (1976). "In such a case where an injury has aggravated an existing condition and thus proximately caused the incapacity, the relative contributions of the accident and the pre-existing condition will not be weighed. Anderson v. A.M. Smyre Co.,54 N.C. App. 337, 283 S.E.2d 433 (1981) (Emphasis added)
The hospital discharge summary dated May 29, 1998 records that plaintiff was admitted with osteomyelitis of his navicula, right foot. The report also indicates that plaintiff did not recall any wound puncture upon admission but upon discharge recalled a nail puncture while at work. Plaintiff also showed the shoe to Dr. Hubbard who noted the shoe as showing a puncture wound presumably from a nail, which would be more consistent with his diagnosis. The final diagnosis was "osteomyelitis, right foot navicula.
In my view the majority, perhaps in an attempt to oversimplify a complex case, has ignored an important part of the medical testimony. My vote is to reverse.
This 16th day of February 2001
 S/_____________ THOMAS J. BOLCH COMMISSIONER