Tracey L. FARMER–CUMMINGS,
Appellant,

v.

FUTURE FOAM, INC.,

and

Personnel Pool of Platte County,
Respondents.

Nos. WD 58393, WD 58429.

Missouri Court of Appeals,
Western District.

Feb. 13, 2001.

As Modified May 29, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 29, 2001.

Application for Transfer Denied
June 26, 2001.

John J. Mohan, Jr., St. Louis, for respondent Future Foam.

Maureen T. Shine, Kansas City, for respondent Personnel Pool of Platte County.

Before BRECKENRIDGE, P.J., ULRICH, J. and HOWARD, J.

ULRICH, Judge.

Tracey Farmer–Cummings appeals from the judgment of the Labor and Industrial Relations Commission (Commission) awarding her permanent partial disability of 80 percent of the body as a whole and future medical benefits in accordance with Missouri's Workers' Compensation statute. The Commission awarded Ms. Cummings 320 weeks of permanent partial disability at $113.33/week ($36,265.60) and undetermined future medical benefits. The Commission further found that Ms. Cummings failed to prove her employer's, Personnel Pool of Platte County's, liability for either past or future temporary total disability benefits or her past medical aid. Ms. Cummings contends that the Commission erred in (1) finding that she was permanently partially disabled rather than permanently totally disabled; (2) finding that she failed to meet her burden of proof regarding Personnel Pool's liability for past medical benefits; and (3) ruling that Personnel Pool was entitled to a subrogation interest in Ms. Cummings' recovery from a third party on her medical malpractice claim. The Commission's award is affirmed in part and reversed in part.

## I. Facts

Ms. Cummings is a twenty-eight-year-old woman who has been employed in various jobs since the age of fifteen. Her longest employment tenure at any one company was about a year. Prior to October 1991, Ms. Cummings worked for various restaurants and temporary agencies. In October 1991, Ms. Cummings became a temporary employee of Personnel Pool of Platte County. As a temporary employee she was assigned to work at Future Foam, Inc. At Future Foam, Ms. Cummings cut and glued various foam products to form cushions for boat seats.

Not long after her employment with Future Foam commenced, Ms. Cummings began experiencing symptoms similar to those of a chest cold. The symptoms rapidly progressed until Ms. Cummings began

experiencing difficulty breathing and was admitted to a hospital on November 6, 1991. The doctors attributed Ms. Cummings' breathing problems to her previous diagnosis of reactive airway disease. Upon release from the hospital, Ms. Cummings returned to work at Future Foam. After returning to her work environment, Ms. Cummings' symptoms worsened in a matter of hours. She was physically unable to tolerate staying in the Future Foam environment and eventually had to leave work. After this incident, Ms. Cummings never returned to work at Future Foam but continued to work at various jobs until January 1998.

After leaving Future Foam, Ms. Cummings continued to experience respiratory problems. She sought medical treatment and was hospitalized for her respiratory problems on a number of occasions. In May 1992, after again being admitted to a hospital, Ms. Cummings condition was diagnosed as asthmatic. Ms. Cummings' respiratory problems continued.

In January 1993, Ms. Cummings filed a claim, based on her respiratory problems, with the Division of Workers' Compensation against Future Foam and later amended that claim to include Personnel Pool. A hearing on the matter was held before an administrative law judge in February 1999. Both Future Foam and Ms. Cummings sought review of the administrative law judge's decision by the full Commission. The Commission reviewed the matter and entered its final award on February 22, 2000, which affirmed the administrative law judge's decision that Personnel Pool, as Ms. Cummings' employer, is liable for Ms. Cummings occupational disease and ordered it to pay $36,265.60 in permanent partial disability benefits and future medical benefits, subject to a $50,000 credit against Ms. Cummings recovery in her third party medical malpractice action. Additionally, the Commission affirmed the administrative law judge's decision that Ms. Cummings failed to prove either her employer's, Personnel Pool's, liability for past or future temporary total disability benefits or her past medical aid. The Commission further found, and accordingly amended the administrative law judge's award, that Future Foam was Ms. Cummings' statutory employer and, therefore, not liable for Ms. Cummings' injuries. This appeal followed.

## II. Standard of Review

"The award of the Commission is reviewed using a two-step evidentiary evaluation process to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it." *Hunsicker v. J.C. Industries, Inc.,* 952 S.W.2d 376, 380 (Mo.App. W.D.1997). The reviewing court examines the record together with all reasonable inferences to be drawn from the evidence therein, in the light most favorable to the findings and award of the Commission, to determine whether they are supported by substantial and competent evidence. *Id.* If the court finds that the findings and award of the Commission are supported by substantial and competent evidence, the reviewing court must then determine whether the Commission's findings and award were nevertheless contrary to the overwhelming weight of the evidence contained in the whole record before the Commission. *Id.* The Commission is the sole judge of the credibility of the witnesses, and thus the reviewing court is bound by the Commission's determinations of credibility. *Bruflat v. Mister Guy, Inc.,* 933 S.W.2d 829, 835 (Mo.App. W.D.1996). "Decisions that are clearly interpretations or applications of law, rather than determinations of fact, are reviewed for correctness without deference to the

Commission's judgment." *Hunsicker*, 952 S.W.2d at 380.

## III. Points on Appeal

### A. Permanent Partial Disability

In her first point on appeal, Ms. Cummings contends that the Commission erred in finding that she was permanently partially disabled rather than permanently totally disabled. Specifically, Ms. Cummings asserts that the Commission's finding was not based upon the substantial evidence in the record as a whole and was contrary to the overwhelming weight of that evidence because the overwhelming weight of the evidence supports her claim that she was permanently and totally disabled by the occupational disease.

■ Under the Missouri Workers' Compensation Act, the claimant who alleges permanent disability must adduce medical evidence that demonstrates with reasonable certainty that the claimed disability is permanent. *Cochran v. Industrial Fuels & Resources, Inc.*, 995 S.W.2d 489, 497 (Mo.App. S.D.1999). "Total disability" is the "inability to return to *any* employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident." § 287.020(7), RSMo 2000 (emphasis added). "Any employment" means any reasonable or normal employment or occupation. *Reves v. Kindell's Mercantile Co., Inc.*, 793 S.W.2d 917, 920 (Mo.App. S.D.1990). The test for permanent total disability is whether Ms. Cummings is able to competently compete in the open labor market given her condition. *Messex v. Sachs Elec. Co.*, 989 S.W.2d 206, 210 (Mo.App. E.D.1999). The pertinent consideration in this test is the determination of whether any employer in the usual course of business would reasonably be expected to employ Ms. Cummings in her present physical condition. *Carlson v. Plant Farm*, 952 S.W.2d 369, 373 (Mo. App. W.D.1997).

■ The Commission's determination that Ms. Cummings is permanently partially disabled rather than permanently totally disabled is supported by competent and substantial evidence and is not contrary to the overwhelming weight of the evidence contained in the record. Although some evidence of permanent total disability was presented, the Commission was entitled to make its own credibility determination. The Commission considered the conflicting opinions and determined which it would accept and this court is bound by those which it accepted. *Bruflat*, 933 S.W.2d at 835.

■ The evidence in the record shows that after Ms. Cummings was exposed to the isocyanates at Future Foam in October–November 1991, she was able to continue to work, as is evinced by her employment in a variety of jobs after the initial exposure through January 1998. During that time, she was also able to complete a program at a business college, which provided her with more employable skills to do sedentary work in a clean office environment. Ms. Cummings was not instructed by any doctor to quit working in January 1998, but she made such a decision on her own initiative. The evidence further indicates that she stopped working, not because she was no longer physically able, but because the Social Security Administration awarded her disability benefits.[1]

---

1. Receipt of Social Security disability benefits is not proof by itself that Ms. Cummings was permanently and totally disabled for purposes of Missouri's Workers' Compensation Act. *Ralph v. Lewis Bros. Bakeries, Inc.*, 979 S.W.2d 509, 516 (Mo.App. S.D.1998).

The expert testimony presented at the hearing also supports the Commission's award. The written deposition of Ms. Cummings primary-care pulmonologist at the time of the hearing, Dr. David Hof, was admitted into evidence. He testified that in 1998, he assumed the duties as Ms. Cummings primary care physician, and he placed her in a new aggressive program to treat her asthma. He opined that the new program seemed to benefit Ms. Cummings. He stated that the new medical program provides a good chance that Ms. Cummings will be able to resume working in a clean office environment. The Commission found Dr. Hof to be a credible witness and partially relied on his testimony in reaching its decision.

The Commission also relied on the testimony of Dr. Gerald Kerby, the only other pulmonologist who testified. Like Dr. Hof, Dr. Kerby also diagnosed Ms. Cummings with severe asthma. Dr. Kerby concluded that Ms. Cummings was not permanently and totally disabled. He opined that Ms. Cummings condition resulted in a permanent partial disability of 70–80 percent of the body as a whole. He further explained that Ms. Cummings could engage in substantial gainful employment as long as it is in a clean work environment.

The Commission also relied on the videotaped deposition of Dr. Glenn Parmette, which was offered as evidence at the hearing. Dr. Parmette diagnosed Ms. Cummings condition as occupationally induced asthma. He categorized her as a Class 4 asthmatic and opined that this condition resulted in a permanent partial disability of 80 percent of the body as a whole. Dr. Parmette further acknowledged that Ms. Cummings is able to work when she "feels good."

The Commission found, based on this evidence, that Ms. Cummings was not per-manently and totally disabled but that she could competently compete in the open labor market. It further found that she had sustained a permanent partial disability of 80 percent to the body as a whole as a result of the occupational disease, asthma, which she contracted in her employment with Personnel Pool. The Commission's decision is supported by competent and substantial evidence and is not against the weight of the evidence in the record. Ms. Cummings first point is denied.

## B. Past Medical Benefits

In her second point on appeal, Ms. Cummings contends that the Commission erred in finding that she failed to meet her burden of proof regarding Personnel Pool's liability for past medical benefits. She argues that notice to Personnel Pool is not a prerequisite to her recovery of past medical benefits. She further argues that even if notice is a prerequisite, Personnel Pool was given notice of Ms. Cummings' work-related condition and failed to provide her with necessary medical treatment. Thus, she claims that she was forced to seek medical treatment for her condition on her own.

The purpose of the Worker's Compensation Act is to provide a method of compensation for injuries sustained by employees through accidents arising out of and in the course of employment and to place the burden of such losses on the industry rather than the injured employee and employee's family. *Bethel v. Sunlight Janitor Service,* 551 S.W.2d 616, 618 (Mo. banc 1977). The Act is to be broadly and liberally interpreted in favor of the employee and "[a]ny question as to the right of the employee to compensation must be resolved in favor of the injured employee." *Minnick v. South Metro Fire Protection Dist.,* 926 S.W.2d 906, 909 (Mo.App. W.D. 1996).

The Act obligates the employer to provide the injured employee indemnity for loss of earning power and disability to work. Additionally, the employer is also required to provide medical care to the injured employee for the treatment of his injury or occupational disease. Section 287.140 provides, in pertinent part, that:

> [i]n addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

§ 287.140.1, RSMo 2000. This section providing for the recovery of medical benefits does not contain a specific notice provision. Thus, the only way to read a notice requirement into the statute is to refer to the general notice provision found in the Workers' Compensation Laws of Chapter 287. The only notice requirement in the Worker's Compensation Act is found in section 287.420, RSMo 2000. These sections are treated as in *pari materia*, so that where a specific section lacks detail such as the notice requirement, the general provisions of Chapter 287 are consulted to supply the needed details.

■■■ The purpose of the notice requirement found in Chapter 287 is to give the employer timely opportunity to investigate the facts surrounding the accident and to provide prompt medical treatment to minimize the injury. *Soos v. Mallinckrodt Chemical Co.,* 19 S.W.3d 683, 686 (Mo.App. E.D.2000) *(citing Gander v. Shelby County,* 933 S.W.2d 892, 895 (Mo. App.1996); *Willis v. Jewish Hospital,* 854 S.W.2d 82, 84 (Mo.App.1993)). The failure to give timely written notice may be excused if the Commission finds either that good cause existed for the failure or that the failure did not prejudice the employer. § 287.420, RSMo 2000; *Soos,* 19 S.W.3d at 686. Thus, written notice to the employer of a work-related accident is not a prerequisite for the recovery of the cost of medical services where the employer suffers no prejudice. *Wiedower v. ACF Industries, Inc.,* 657 S.W.2d 71, 74 (Mo.App.E.D.1983). In examining for prejudice, the issue to be determined is whether Ms. Cummings' resulting disability would have been less if Personnel Pool had been afforded the opportunity to promptly furnish her with medical aid. *Klopstein v. Schroll House Moving Co.,* 425 S.W.2d 498, 504 (Mo.App. 1968).

■■■ The facts found by the Commission do not support its denial of an award for Ms. Cummings' past medical benefits. First, in its findings of facts and rulings the Commission specifically found that Ms. Cummings' failure to give the requisite written notice to Personnel Pool did not result in prejudice to the employer. The Commission found that all the treatment Ms. Cummings received would have been required had she given her employer timely written notice of her occupational disease.

The record also reflects that a significant portion of Ms. Cummings medical bills were a result of her need for emergency medical treatment. She contacted the occupational disease in November 1991. From November 1991 to January 1993, when Ms. Cummings filed her claim with the Division of Workers' Compensation, the vast majority of the treatment Ms. Cummings received was obtained under emergency circumstances. Thus, even had Ms. Cummings provided Personnel Pool written notice of her medical condition and had the employer directing her medical treatment, Personnel Pool would not have directed her emergency care.

■ Finally, after Ms. Cummings filed her claim in January 1993, Personnel Pool denied the allegations in the claim. "Where an employer denies the allegations in an employee's claim, it also necessarily denies liability for medical aid to the employee, and the employee may be entitled to an award for the cost of medical services." *Wiedower*, 657 S.W.2d at 74. By its denial of liability and neglect to provide treatment, Personnel Pool waived its right to direct the treatment for Ms. Cummings occupational disease. *Id.* Ms. Cummings did not choose to direct her own medical treatment, she was forced to after Personnel Pool denied liability for her medical aid. Moreover, a significant portion of Ms. Cummings medical bills incurred after January 1993, were also a result of her continued need for emergency medical treatment, and thus it would not have been possible for Personnel Pool to select the health care provider.

Accordingly, the decision of the Commission as it pertains to Ms. Cummings' past medical benefits is reversed. The evidence presented to the Commission is sufficient to prove Personnel Pool's liability for Ms. Cummings' past medical benefits. The case is remanded to the Commission for its determination of the proper amount of past medical benefits to be awarded to Ms. Cummings.

## C. *Subrogation*

Ms. Cummings' specific argument asserted as her third and final point on appeal, that the Commission's determination that Personnel Pool is entitled to a subrogation interest in her recovery from a third party is inconsistent with the Commission's denial of an award for past medical benefits to her, need not be addressed because this case is remanded to the Commission for it to award Ms. Cummings' past medical benefits. The attendant issue of subrogation, however, is addressed because past medical benefits will be awarded to Ms. Cummings.

■ Section 287.150(1) provides that "[w]here a third person is liable to the employee ... for the injury [to that employee] ... the employer shall be subrogated to the right of the employee ... and such employer may recover any amount which [the] employee ... would have been entitled to recover." § 287.150.1, RSMo 2000. More specifically, when a physician aggravates the employee's original injury, as is the case here, the employer is allowed a subrogation interest in any recovery that the employee obtains from an action against that physician. *Schumacher v. Leslie*, 360 Mo. 1238, 232 S.W.2d 913, 918 (1950). Section 287.150.3 adds that when the employee effects the settlement with the third person, the "total amount paid to the employee ... shall be treated as an advance payment" of any future installments of compensation. § 287.150.3(1), RSMo 2000. The purpose of this section is to protect and benefit the employer liable for compensation payable by it. *McCormack v. Stewart Enterprises, Inc.*, 916 S.W.2d 219, 224 (Mo.App. W.D.1995). The statute insures that there is not a double recovery by the employee, which has been called an 'evil to be avoided.' *Schumacher*, 232 S.W.2d at 919.

■ Section 287.150 applies to the settlement of Ms. Cummings' medical malpractice claim because the Commission awarded compensation to Ms. Cummings and will award past medical benefits to her on remand. Thus, Personnel Pool is entitled to a credit based on Ms. Cummings' settlement with St. Luke's Hospital. The settlement award shall be apportioned in accordance with subsection 3 of section 287.150. *See Ruediger v. Kallmeyer Brothers Service*, 501 S.W.2d 56 (Mo. banc 1973).

## IV. Conclusion

The final award of the Labor and Industrial Relations Commission is affirmed in part and reversed in part. The Commission's finding that Ms. Cummings is permanently partially disabled rather than permanently totally disabled is affirmed. The portion of the Commission's award denying Ms. Cummings' past medical benefits is reversed. The Commission's award is remanded for determination of the proper amount of past medical benefits to be awarded to Ms. Cummings. Personnel Pool has a subrogation interest in the settlement proceeds received by Ms. Cummings for her medical negligence claim against St. Luke's Hospital in a sum not to exceed the amount paid or to be by Personnel Pool to Ms. Cummings for medical benefits awarded by the commission.

BRECKENRIDGE, P.J., and HOWARD, J., concur.