***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or to amend the prior Opinion and Award, except for certain modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and Lowe's Home Improvement.
3. Defendant-employer is a duly qualified self-insured and SRS Specialty Risk Services is the Third Party Administrator.
4. Plaintiff's average weekly wage at the time of the alleged accidents was $382.06, yielding a compensation rate of $254.71.
5. Plaintiff's medical records were stipulated into evidence asStipulated Exhibit 1.
6. Industrial Commission Forms and filings relative to these cases were stipulated into evidence as Stipulated Exhibit 2.
7. The issues before the Full Commission are: (i) whether plaintiff sustained a compensable injury by accident on October 19, 2001 (IC No. 203963), and November 9, 2001 (IC No. 264893); and (ii) if so, what compensation, if any, is due plaintiff.
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of Christopher J. Bashore, M.D.; W. Scott Boyd, P.A.; and Russell A. Amundson, M.D., are OVERRULED.
 ***********
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 44 years old and had received a high school diploma. Plaintiff began working for Lowe's in Kernersville on May 5, 2001. Prior to working for Lowe's, plaintiff's employment history included jobs as a metalworker, roofer, air conditioning technician, automobile painter, and shipper/receiver. As part of this last position, plaintiff completed various paperwork regarding customer orders.
2. Plaintiff's job with Lowe's was as a receiver, which required him to unload major appliances, windows, doors, and carpeting. Plaintiff was required to receive merchandise properly, move received inventory to the sales floor, and stock such inventory in the proper places. Plaintiff used a hand truck but was not allowed a forklift because it easily damaged merchandise while unloading. Twenty trailer loads of merchandise arrived every day, and three employees unloaded these trucks.
3. Plaintiff completed his work and went home on many occasions with a backache or other muscle soreness. Plaintiff had been involved in a head-on motor vehicle collision on May 5, 1988, from which he suffered some residual back and left leg pain. Medical records from January 2000, when plaintiff changed family physicians to Dr. Cathy Judge, reveal a history of a motor vehicle accident "for which he still has low back pain." However, by 2001 most of this pain had resolved and none of it was disabling for plaintiff.
4. On October 19, 2001, plaintiff was pushing and lifting a large roll of carpet when he felt a pull in his back and lower left extremity. Initially, plaintiff experienced muscle soreness and cramping in his leg following the incident. He told his supervisor, Chris Siwinski, about the incident. Plaintiff indicated to Chris that if the pain did not improve, he would follow up with Chris and they would report the situation with Carl Brown.
5. Plaintiff took Aleve, which seemed to resolve the muscle spasm, cramps, and soreness that he was experiencing at that time. Plaintiff continued to work without missing any time following the incident. Inasmuch as no permanent injury resulted from the October 19, 2001, specific traumatic incident, plaintiff abandoned his claim with respect to this incident (IC No. 203963), as announced by his attorney at oral argument before the Full Commission.
6. On October 19, 2001, plaintiff went to his primary care physician at Piedmont Triad Family Medicine with complaints of posterior left thigh pain. Scott Boyd, P.A., examined plaintiff and indicated in his medical report that plaintiff had lifted several heavy objects at work and was required to push a great deal with his legs, which may have possibly hurt his leg.
7. Plaintiff was diagnosed with a leg muscle strain and there was a file notation indicating a possible nerve problem in plaintiff's back or hip. Physician assistant Boyd noted that because of a negative straight leg raise, and the fact that the pain was isolated in the back and lateral part of plaintiff's leg, that the muscle was very tight on physical examination. Physician assistant Boyd believed the symptoms plaintiff was experiencing was more likely a leg problem than a back problem. Plaintiff was given medication and returned to work.
8. On October 22, 2001, plaintiff returned to Piedmont Triad Family Medicine and was again seen by physician assistant Boyd. Plaintiff's diagnosis and treatment remained the same with the suggestion of physical therapy. Plaintiff felt his symptoms were improving and did not pursue physical therapy.
9. On October 31, 2001, plaintiff saw Betsy Brais, P.A., at Triad Family Medicine. Physician assistant Brais noted a specific incident reported by plaintiff at work while he lifted the carpet and felt some burning in the back of his left thigh. After the October 31, 2001, examination, plaintiff was diagnosed with a hamstring muscle spasm. Plaintiff continued to work at his regular job without missing time after October 31, 2001.
10. On November 9, 2001, plaintiff was unloading 12 to 13 wooden framed windows that weighed 40 to 50 pounds a piece. While unloading the windows, he experienced a pop in his lower left hip area. Plaintiff carried the windows with his arms spread due to the size of the windows. Plaintiff did not think much of the pop at the time other than he was sore and tired when leaving work.
11. The following morning, plaintiff awoke with a burning in his left leg, hip and groin. The pain was sharp, and felt to be stabbing, burning and radiating down his left leg. Plaintiff's pain was worse than he had ever experienced previously. The pop in the lower left hip area while unloading the windows, followed by the pain in his left leg, hip, and groin, constituted a specific traumatic incident of the work assigned, and its consequences are compensable under the Workers' Compensation Act.
12. Plaintiff was not scheduled to work for Lowe's on November 10, 2001, but went there to report the incident to Herb Blankenship. Mr. Blankenship and Danny Wallace assisted plaintiff in completing the incident report.
13. Plaintiff was referred to PrimeCare in Kernersville, where he was released to return to light-duty work and referred to physical therapy.
14. Plaintiff did light-duty work for several days and was released by PrimeCare to return to full-duty work on November 20, 2001. Because plaintiff's symptoms progressively deteriorated, plaintiff insisted on being seen by a back specialist.
15. On November 11, and again on November 23, 2001, plaintiff presented to the emergency room at Forsyth Memorial Hospital for persistent symptoms that were not relieved by the treatment as recommended by PrimeCare.
16. Plaintiff continued to work for Lowe's until November 28, 2001. At this time, plaintiff was unable to work further and continued to insist on appropriate medical care.
17. On December 10, 2001, plaintiff was seen for a follow-up visit with PrimeCare. Plaintiff was advised not to work until Dr. Bashore at High Point Orthopedics could see him on December 14, 2001.
18. Plaintiff presented to Dr. Bashore, an orthopaedic surgeon, and was examined. The examination indicated loss of lumbar lordosis, or straightening of the spine due to spasm, and a positive straight leg raise. Dr. Bashore determined plaintiff was experiencing low back pain with radicular leg pain and a possible herniated disc. Dr. Bashore recommended an MRI, which indicated a left lateral disc bulge at L4-5 and an impingement on the left L4 nerve root. Plaintiff had a centralized disc bulge at L5-S1 with posterior displacement of the S1 root nerve on the left.
19. Dr. Bashore referred plaintiff to Dr. Russell H. Amundson for an evaluation for possible surgery.
20. Dr. Bashore deferred to Dr. Amundson, the physician who performed the surgery, with respect to the causation link between the November 9, 2001, specific traumatic incident and the injuries giving rise to the surgery. Defendant argued that Dr. Bashore did not give an opinion to satisfy the required medical certainty standard. Dr. Bashore saw plaintiff on two occasions and referred him to Dr. Amundson. Dr. Bashore was unable to render an opinion on whether plaintiff ruptured a disk in his back on November 9, 2001, whether he caused the disk to herniate more extensively, or whether the incident caused inflammation around that site. Dr. Bashore acknowledged that it is difficult to say, but that it is possible that any prior condition which plaintiff may have been experiencing was aggravated by the incident of November 9, 2001. Dr. Bashore acknowledged "there are a lot of decisions that go into doing surgery on a herniated disk, some of which are subjective." He agreed that Dr. Amundson might better answer the question. Contrary to defendant's position, Dr. Bashore's opinion testimony, standing alone, does not support a denial of plaintiff's claim.
21. Plaintiff was examined by Dr. Amundson at Johnson Neurological Clinic on January 24, 2002. Plaintiff explained to Dr. Amundson that his problems began with the lifting of windows at work. An EMG/Nerve Conduction Study was requested as well as a lumbar myelogram. The EMG confirmed left sided radiculopathy and the myelogram confirmed the results of the MRI. Dr. Amundson diagnosed plaintiff with lumbar disc rupture and recommended medications and a course of physical therapy.
22. Dr. Amundson prescribed conservative treatment, which was not successful. On May 21, 2002, Dr. Amundson performed a left L4-5 laminectomy, foraminatomy, and microciskectomy. Dr. Amundson opined, and the Full Commission finds as fact, that the November 9, 2001, incident when plaintiff was lifting the wooden windows was a proximate cause of the lumbar disc rupture for which he performed surgery. Dr. Amundson indicated the distinct symptoms relayed by plaintiff following November 9, 2001, were not present prior to that date. Prior to November 9, 2001, plaintiff was suffering from a muscle strain and not a ruptured disc.
23. Dr. Amundson, an experienced and respected neurosurgeon operated on plaintiff's back and gave a lengthy explanation of why he believes (1) plaintiff had pre-existing degenerative changes in his spine; (2) plaintiff was being treated for a hamstring or muscular strain prior to November 9, 2001; and (3) plaintiff's actions in lifting windows was a sufficient incident to cause plaintiff's disk herniation. The Full Commission finds as fact the three foregoing beliefs of Dr. Amundson.
24. To confirm that he was confident about his opinion causally relating the plaintiff's injury to the lifting windows incident on the job, Dr. Amundson was asked:
 Q: Okay. And just to clarify your opinion, Dr. Amundson, make sure I have it on the record. Do you have an opinion to a reasonable degree of medical certainty as to whether the November 9, 2001 incident, described to you by Mr. Rogers, caused or significantly aggravated any prior condition to the extent that he required the surgery, and other treatment you provided to him?
Ms. Babcock: Objection.
 A: I think I came close to answering the question earlier when I said, you know, I `m really relying on what the patient tells me. And I think the description of lifting windows is a sufficient cause to injure a disk, which will result in a disk herniation. So within that context I would say, yes.
25. After reviewing the plaintiff's prior medical history, including the histories given by plaintiff to his family physician and to PrimeCare, Dr. Amundson concluded, and the Full Commission finds as fact, that the lumbar disc rupture for which he performed surgery was a proximate result of the November 9, 2001, incident when plaintiff was lifting wooden windows. Dr. Amundson explained that leg pain is a very gross description of a symptom and can confuse the practitioner, but in the end, plaintiff's overall presentation of symptoms to him on January 24, 2002, were not the same as the presentation of symptoms relayed to Triad Family Medicine in October 2001. Dr. Amundson indicated that the distinct symptoms relayed by plaintiff following November 9, 2001, were not present prior to that date. Prior to November 9, 2001, plaintiff was most likely suffering from a muscle strain. Dr. Amundson's testimony is supported by the evidence indicating that (1) plaintiff's symptoms were relieved by activity at work; (2) the burning and tightness in the posterior part of his hamstring got worse when he was resting; (3) plaintiff had a negative straight leg raise; and (4) plaintiff had full range of motion in his back. When Dr. Amundson examined plaintiff on January 24, 2002, plaintiff had a limited range of motion of his back, radiating leg pain, and could not get relief from his symptoms, particularly when active.
26. The medical history provided by plaintiff to the medical providers in this case is consistent with the report plaintiff provided to his employer. The Full Commission finds plaintiff's testimony to be credible.
27. By June 13, 2002, plaintiff was showing some improvement in his back and leg pain and started a course of physical therapy. Plaintiff continued to experience pain and a repeat lumbar MRI was performed on July 27, 2002. The MRI revealed a mild left foraminal narrowing at L4-5 with post surgical changes.
28. Plaintiff was referred to the Pain Management Clinic at Johnson Neurological Clinic for additional treatment and medications. Mark H. Scheutzow, M.D., provided care for plaintiff at the Pain Management Clinic. Plaintiff was diagnosed with a post laminectomy syndrome, myofascial pain, sacroiliac arthropathy, and chronic pain syndrome. Dr. Amundson indicated that chronic pain occurs in some percentage of patients who have lumbar spine surgery and chronic pain can be disabling inasmuch as it is associated with sleeplessness, depression, and other similar things.
29. Plaintiff was dissatisfied with the management of his pain at Johnson Neurological Clinic and was referred to the Rehab Center. John E. Begovich, D.O., treats plaintiff for his pain at the Rehab Center.
30. On May 22, 2003, plaintiff was released to return to work four (4) hours per day five (5) days per week with frequent position changes and no lifting over twenty (20) pounds. Lowe's does not have employment available within those restrictions.
28. As of the date of the hearing before the Deputy Commissioner, plaintiff remained, due to his compensable injury, unable to earn wages.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following additional:
 CONCLUSIONS OF LAW
1. On November 9, 2001, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with Lowe's. The injury by accident was caused by a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. When an injury to the back arises out of and in the course of employment and is the direct result of a specific traumatic incident of the work assigned, the injury by accident will be construed to include any disabling physical injury to the back causally related to the traumatic incident. N.C. Gen. Stat. § 97-2(6). In other words, an employer accepts an employee as he is, and if a compensable injury precipitates a latent physical condition, the entire disability is compensable. Anderson v. A.M. Smyre Mfg. Co., 54 N.C. App. 337,283 S.E.2d 433 (1981).
3. As result of his compensable injury by accident on November 9, 2001, plaintiff is entitled to temporary total disability compensation from November 28, 2001, and continuing until he is able to earn wages or further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to receive medical treatment for his November 9, 2001, compensable injury by accident, so long as said treatment should effectuate a cure, provide relief, or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fees hereafter set forth, defendant shall pay to plaintiff temporary total disability compensation in the amount of $254.71 per week from November 28, 2001, until such time as plaintiff is able to earn wages, or until further order of the Industrial Commission. Compensation that has accrued to date shall be paid in lump sum subject to an attorney's fee approved in Paragraph 3.
2. Defendant shall pay all medical expenses resulting from plaintiff's November 9, 2001, compensable injury by accident at rates in accordance with the Industrial Commission Medical Fee Schedule.
3. A reasonable attorney's fee of 25% percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel. Defendant shall pay 25% of the lump sum due plaintiff under Paragraph 1 of this AWARD directly to plaintiff's counsel. Thereafter, defendant shall pay every fourth check directly to plaintiff's counsel.
4. Defendant shall pay to plaintiff interest at eight percent (8%) per year from the date of the hearing before the Deputy Commissioner until paid with respect to that portion of the lump sum that had accrued to the date of such hearing. Defendant shall pay to plaintiff interest at eight percent (8%) per year from the date each weekly payment was due with respect to those payments due from and after the date of the hearing before the Deputy Commissioner to and including the date paid to plaintiff.
5. Defendant shall pay the costs.
This 4th day of February 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER