**CUTSHIN COAL COMPANY and Oak Coal Company, Appellants,**

**v.**

**Alonzo BEGLEY and the Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

Dec. 11, 1964.

Reeves, Barret & Cooper, Richard D. Cooper, Hazard, for appellants.

S. E. Duff, Hazard, for appellees.

CLAY, Commissioner.

This is a silicosis workmen's compensation case. The award, based on total and permanent disability, was affirmed by the circuit court.

The employee ceased work for appellants on March 9, 1959, prior to which time he had been exposed to rock dust in his occupation as a coal miner. He did not quit work because of disability but he was having trouble with his breathing at that time.

It was not until June 14, 1962, that he was advised by a doctor of a condition indicating silicosis. His claim was filed shortly thereafter.

Appellants' first contention is that this claim was barred under KRS 342.316 on the ground that the employee failed to give notice "as soon as practicable after the employe first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted such disease * * *." It is argued that when the employee last worked he was aware of symptoms indicating an occupational disease, and since he testified he has been disabled ever since that time, he was required to give notice of his disability under KRS 342.316(2) and to file his claim within one year under KRS 342.316(3).

■ We have held that an employee is not required to give notice of an occupational disease until he is actually disabled. Mary Helen Coal Corporation v. Chitwood, Ky., 351 S.W.2d 167; Peabody Coal Company v. Guthrie, Ky., 351 S.W.2d 168; Peabody Coal Company v. Harp, Ky., 351 S.W.2d 170; Peabody Coal Company v. Powell, Ky., 351 S.W.2d 172. For the purpose of giving notice (or filing a claim), the employee will not be considered disabled as long as he continues to be employed in

full-time employment by the same employer. Stephens Elkhorn Coal Company v. Tibbs, Ky., 374 S.W.2d 504; Brock v. International Harvester Company, Ky., 374 S.W.2d 507. However, assuming appellee was not disabled under the above cases when he quit his employment, according to his own testimony he had not been able to work since then. Consequently he was disabled as of the time he left appellants' employment.

■ Since we have disability in this case, the question is whether the employee had experienced a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he had contracted such disease, which would require him to give notice as soon as practicable after he quit work. In Childers v. Hackney's Creek Coal Company, Ky., 337 S.W.2d 680, we held this a question of fact to be determined by the Board. In that case we upheld a finding that shortness of breath was not such a "distinct manifestation".

Here the employee for some time before he quit work had experienced shortness of breath and tired easily. When asked if he had some idea he might have had "rock dust" in 1959, he answered, "he had an idea he had". The record does not disclose the significance of this answer. It was not shown that "rock dust" could be considered synonymous with "silicosis" (if such is the case).

■ The difficulties experienced by the employee may have been caused by something other than an occupational disease. Certainly he cannot be held to have diagnosed his condition as silicotic. (Even doctors experience difficulty in diagnosing this disease.) His knowledge of disability did not necessarily establish awareness of an occupational disease. It is our view that the Board, on the evidence, could properly find the employee was not sufficiently aware that he had contracted an occupational disease until shortly before he gave notice. Consequently the claim was timely asserted.

It is next contended that even if the employee was suffering from some degree of silicosis (which appellants admit), he did not establish this as disabling. Three doctors testified about the employee's silicotic condition but none of them testified concerning the nature or extent of his disability. The only substantial evidence on this point is the testimony of the claimant himself. He stated that he had not been able to work since he quit work in 1959, and that his condition had steadily deteriorated since then. The medical evidence shows that, among other things, he was blind in one eye, had hyperthrophic arthritis, and suffered from psychoneurosis with anxiety and conversion symptoms.

The employer contends that at least disability benefits should be apportioned under KRS 342.316(9).

There was sufficient evidence to establish that the employee's basic disability was caused by silicosis. The employee's testimony was to the effect that his inability to work arose from the difficulty with his breathing. The Board could find that his condition, traceable to silicosis, would foreclose his re-employment in the only occupation for which he is qualified. See Eastern Coal Corporation v. Maynard, et al., Ky., 384 S.W.2d 320. We believe the finding of total and permanent disability resulting from this occupational disease has sufficient support in the record.

The judgment is affirmed.

MONTGOMERY, Judge (dissenting).

The mangled remains of KRS 342.316(2) may now be laid to rest. What once was a reasonably understandable statute, except for one slight legislative deformity, a badly chosen word, has been so carved upon that any surgeon would envy the skill exercised by this Court in cutting away the meaning of plain statutory language. This poor statute has been undergoing surgical treatment by this Court with a legislative scalpel, judicially wielded, for a long time. See dissent in Stephens Elkhorn Coal Company v. Tibbs, Ky., 374 S.W.2d 504.

In the present case, Begley, the employee, testified as follows:

"Q. Before March 9, 1959, how long had you been experiencing trouble with your breathing while you were working at Oak Mining Company or Cutshin Coal Company?

"A. I will say the last year I worked there I would work three or four hours and would go to getting tired, didn't know what was the matter with me. And at the last of the shift I would drag, but I had a big family and had to try to go.

"Q. Did you have the same type of symptoms with your breathing that you are having now?

"A. No, it's worser now.

"Q. But you had similar type trouble with your breathing even though it's worse now?

"A. Yes sir.

"Q. Had you ever heard of rock dust or dust on your lungs?

"A. No sir.

"Q. You know that many men that worked in the coal mines or some men that worked in the coal mines had rock dust or were supposed to have rock dust, had trouble with their breathing?

"A. Yes sir, I had heard of it.

"Q. And you knew you were having trouble with your breathing at that time?

"A. Ye sir.

"Q. Did you have some idea you might have rock dust at that time?

"A. I didn't know for sure, but I had an idea I had.

"Q. That was in '59?

"A. Yes sir."

By this testimony the employee shows that he has not been able to work since he quit his employment on March 9, 1959. Consequently, under the Tibbs and Brock cases he has been disabled since that date.

The language of his testimony shows that on March 9, 1959, Begley was having trouble with his breathing; that he continued to have the same symptoms which grew worse; that he knew that men working in coal mines had "rock dust" evidenced by difficulty in breathing; and that he had "some idea" that he had "rock dust" in 1959 but was not sure of it. This would seem to indicate clearly that in 1959 Begley first experienced a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he had contracted such disease, to use the statutory language.

The statute does not require that the employee must know with scientific certainty that he has silicosis. It only requires that he have symptoms which would cause him to think that he might have an occupational disease. Under Begley's testimony as quoted, he knew this in 1959.

The Court in the majority opinion has shown nimble footwork in dancing away from the entrapment of its definition of disability by saying that it was not shown that "rock dust" is synonymous with silicosis and that the employee's knowledge of disability did not necessarily establish an awareness of an occupational disease. Such statements are but scalpel strokes which cut away the vitals of the statute as expressed in plain meaning and easily understood words.

This affords no justifiable basis for the majority opinion. The obvious conclusion, ignored in the majority opinion, is that Begley "had an idea" that he had "rock dust" in 1959 and that "rock dust" was known to him to be an occupational disease caused by breathing the dust while engaged in mining coal. It is not essential that he know that he had silicosis or any other type of occupational disease. It was only necessary that he realize that he had the symptoms of some type of occupational disease.

On the occasion of each operation on this statute, I have tried to administer oxygen in the form of the usual meaning of plain ordinary words, but I fear that the statute has lost too much now and will necessarily have to be resurrected by legislative rebirth.

Accordingly, I respectfully dissent.