**INLAND STEEL COMPANY and Special Fund, Appellants,**

v.

**E. H. TERRY and Workmen's Compensation Board of Kentucky, etc., Appellees.**

Court of Appeals of Kentucky.

Sept. 25, 1970.

As Modified on Denial of Rehearing March 26, 1971.

Harry C. Campbell, Pikeville, Martin Glazer (Dept. of Labor), Frankfort, for appellants.

Dan Jack Combs, Pikeville, J. Keller Whitaker (Ky. Workmen's Compensation Board), Frankfort, for appellees.

PALMORE, Judge.

Inland Steel Company and the Special Fund [KRS 342.120, 342.122 and 342.316 (13)] appeal from a judgment sustaining a maximum award of workmen's compensation benefits to the appellee, E. H. Terry.

After working for Inland Steel Company as an underground coal miner for more than 25 years Terry retired on January 31, 1964, pursuant to a long-standing company policy requiring retirement at the age of 65 years. Thereafter he drew Social Security and UMW pension benefits and sought no further employment of a substantial character except for occasional preaching. At the time of his retirement he had suffered pains in his chest over the past four or five years and suspected that he might have silicosis but had not consulted a physician because, as he says, "I didn't want to believe I had it." The condition grew progressively worse, accompanied by shortness of breath and coughing, until at last he went to a doctor in November of 1968 and

was advised that he was suffering from pneumoconiosis. He gave notice to Inland Steel Company on the next day and followed shortly with his application for workmen's compensation.

Upon conflicting but competent evidence the board found that Terry became totally and permanently disabled as the result of an occupational disease arising out of and in the course of his employment as a coal miner and that he was last injuriously exposed during a period of six months or more while employed by Inland Steel Company. It found also that he had been exposed to the hazards of the disease in his employment within this state for at least two years immediately next before his disability. See KRS 342.316(1), (4) and (13) (a). Although Terry's application specified January 31, 1968, as the date on which he became affected by the disease, the board found that he became disabled on or about January 31, 1964, the date of his retirement.

The grounds urged for reversal are that (1) Terry's claim was barred by limitations, (2) the evidence was not sufficient to support the finding that he was or became disabled on January 31, 1964, and (3) workmen's compensation should not be payable to a person who has voluntarily accepted retirement benefits and has removed himself from the labor market.

■ We reject the contention that voluntary retirement and removal from the labor market, as such, extinguishes or in any way limits the right to workmen's compensation benefits. While it is true as a general proposition that the ultimate objective of the law is to offset lost earnings, it is accomplished through payment for lost earning power. If an otherwise compensable injury or disease has impaired a claimant's ability to earn a livelihood, what he actually intended to do with his time in the future is immaterial, and the acceptance of retirement benefits is irrelevant. See Beth-Elkhorn Corporation v. Hillman, Ky., 465 S.W.2d 281 (decided March 26, 1971).

■ Whether and the extent to which the infirmities of advancing age contribute to or are the sole cause of an alleged disability is neither more nor less than a question of fact to be resolved by the board on the basis of the evidence in any given case, whatever may be the claimant's age.

On the limitations point the appellants rely principally on that portion of KRS 342.316(3) which requires filing of a claim within one year after the last injurious exposure or after the claimant experiences symptoms sufficient to apprise him that he has contracted the disease. They argue in effect that if, as the board found, Terry was indeed disabled at the time he retired, then by his own admission he had experienced symptoms sufficient to apprise him of it. Considering the word "disability" as it has been construed in the line of occupational disease cases since Mary Helen Coal Corporation v. Chitwood, Ky., 351 S.W.2d 167 (1961), we are inclined to agree that for one to assert on the one hand that he was "disabled" by reason of an occupational disease and at the same time profess not to have experienced symptoms sufficient to apprise him of it would stretch the bounds of credulity. Cf. Allen v. Commonwealth, Dept. of Highways, Ky., 425 S.W.2d 283 (1969). Since, however, we are of the opinion that there is no substantial evidence of disability existing in 1964 it is unnecessary to pursue the argument further.

■ It is a recognized fact that the occupational disease of pneumoconiosis develops gradually and over a long period of time. As one of Terry's medical witnesses testified, "You just don't develop it in five or seven years." The two physicians who appeared in Terry's behalf testified that on the basis of examinations and X-ray films made in January of 1969 (five years after his retirement) they were of the opinion that he had Stage 1 pneumoconiosis. They conceded that this is the earliest diagnosable and least recognizable stage of the disease. None of the medical witnesses for the defense was able to discern any evidence whatever of pneumoconiosis. At best, a

conclusion that it could have been detected five years before that time would rest upon the merest of speculation. In short, then, we find the evidence sufficient to sustain a finding that Terry had a diagnosable case of pneumoconiosis in late 1968 or early 1969, but not in January of 1964.

The facts of this case are similar to those in Cutshin Coal Company v. Begley, Ky., 385 S.W.2d 59 (1964), except for one significant difference. In the *Cutshin* case the claimant testified that he had not been able to work since leaving his employment. "Consequently," we held, "he was disabled as of the time he left appellants' employment." In this instance, however, neither Terry himself nor any other witness suggests that he was unable to work following his retirement.

In Beth-Elkhorn Corporation v. Terry, Ky., 452 S.W.2d 417 (1970), on the basis of the claimant's testimony that he was physically unable to accept employment in February of 1968, coupled with proof that in February of 1969 he was found to be totally disabled from silicosis or pneumoconiosis, we upheld a finding that his disability had existed when he quit work on November 17, 1967. In the instant case, however, considering the minimal degree to which the disease had advanced in November of 1968, its existence at that time would not support an inference that it had reached a disabling degree on January 31, 1964.

■ KRS 342.316(4) provides, "In claims for compensation due to the occupational disease of silicosis or any other compensable pneumoconiosis it must be shown that the employe was exposed to the hazards of the disease in his employment within this state for at least two years immediately next before his disability or death." This court has been extremely liberal in its construction of that provision, having gone so far as to hold that the phrase "for at least two years" means the period of time "during which * * * the employe must be exposed," etc. See discussion in South East Coal Company v. Ison, Ky., 446 S.W.2d 638 (1969). Having

now taken another long look at this statute, however, we have come to the reluctant conclusion that its plain wording demands a more restrictive interpretation than some of our recent opinions have given it. In particular, the holding in Beth-Elkhorn Corporation v. Thomas, Ky., 404 S.W.2d 16, 19 (1966), that it applies only when injurious exposure in this state has been interrupted by injurious exposure outside the state is overruled. We reiterate the position that a strictly literal construction, requiring exposure each and every day for two years until the very moment the disease becomes disabling, would be unreasonable, but we cannot avoid the conclusion that the statute invokes the following specific requirements to establish compensability:

(1) The exposure must exist, and must exist in Kentucky, for at least two years immediately preceding disability as the term "disability" has been construed by this court in occupational disease cases.

(2) The continuity of exposure during that time must be without substantial interruption regardless of where the claimant was or what he was doing during the period or periods of such interruption.

What constitutes substantial interruption of the required exposure is basically a factual question for the board unless, of course, the facts are so clear that it can be determined as a matter of law. See South East Coal Company v. Caudill, Ky., 465 S.W.2d 62 (decided March 26, 1971).

Summing up this particular case, the dispositive shortcoming is that since there is no evidence of when the claimant became disabled it cannot be found that his injurious exposure subsisted over the period of two years next before that time.

Terry argues. that appellants waived limitations by not asserting it as a special defense. Whether that position would be valid with respect to the provisions of KRS 342.316(3) we need not decide. We do not construe KRS 342.316(4) as a statute of

limitations. It simply establishes one of the essential facts that must be proved in support of the claim.

The judgment is reversed with directions that the cause be remanded to the board for dismissal.

MILLIKEN, C. J., and NEIKIRK, OSBORNE, REED and STEINFELD, JJ., concur.

EDWARD P. HILL, Jr., J., dissents.