Alvin KALLHOFF, Appellant,

v.

**NORTH DAKOTA WORKERS'
COMPENSATION BUREAU,**
Appellee.

Civ. No. 910463.

Supreme Court of North Dakota.

April 24, 1992.

Mark G. Schneider, of Schneider, Schneider & Schneider, Fargo, for appellant.

Dean J. Haas, Asst. Atty. Gen., Bismarck, for appellee.

LEVINE, Justice.

Alvin R. Kallhoff appeals from a district court judgment affirming an order of the Workers' Compensation Bureau (Bureau) offsetting Kallhoff's social security retirement benefits against his workers' compensation disability benefits. We reverse and remand.

On October 14, 1983, Kallhoff suffered permanent and totally disabling injuries while employed as a truck driver by E.W. Wylie Corp. The Bureau accepted Kallhoff's claim and has paid disability benefits from November 1983. In May of 1984, Kallhoff also qualified for federal social security disability benefits. The Bureau offset Kallhoff's social security disability payments against his workers' compensation disability payments, as directed by NDCC § 65–05–09.1.[1] In 1989, the Legislature enacted NDCC § 65–05–09.2[2] to offset federal social security retirement benefits against workers' compensation disability benefits for "workers who retire on or after July 1, 1989." 1989 S.L., ch. 770 § 4.

In January of 1990, when Kallhoff turned sixty-five, the Social Security Administration automatically converted Kallhoff's social security disability benefits into retirement benefits. The Bureau then began offsetting these social security retirement benefits against Kallhoff's workers' compensation disability benefits. Kallhoff objected to the offset and an administrative hearing was held.

1. NDCC § 65–05–09.1 says in part:

"When an injured employee, spouse or dependent of an injured employee, is eligible for and is receiving permanent total or temporary total disability benefits under section 65–05–09, and is also eligible for, is receiving, or will receive, benefits under Title II of the Social Security Act [42 U.S.C. 423], the aggregate benefits payable under section 65–05–09 must be reduced, but not below zero, by an amount equal as nearly as practical to one-half of such federal benefits...."

2. NDCC § 65–05–09.2 says:

"If a claimant is entitled to permanent total disability benefits and social security retirement benefits under 42 U.S.C. sections 402 and 405, the aggregate wage-loss benefits payable under this title must be determined in accordance with this section. The employee's social security retirement offset must equal forty percent of the calculated ratio of the employee's average weekly wages, as calculated on the commencement of the first, or recurrent, disability under section 65–05–09, to the current state's average weekly wage. Any offset calculated cannot exceed forty percent of the employee's weekly social security retirement benefit. If a claim has been accepted on an aggravation basis and the worker is eligible for social security benefits, the bureau's offset must be proportionally calculated. An overpayment must be recouped in the same manner as set forth in section 65–05–09.1. *The provisions of this section are effective for workers who retire on or after July 1, 1989.*" (Emphasis added.)

The Bureau concluded that the January 1990 conversion of his social security disability benefits to retirement benefits made Kallhoff a person who "retir[ed] on or after July 1, 1989." The Bureau concluded that the offset provision in NDCC § 65–05–09.2 applies to any worker whose social security retirement benefits commenced on or after July 1, 1989. Kallhoff was such a worker, so his social security retirement benefits were subject to offset against his workers' compensation disability benefits. Kallhoff appealed to the district court, which affirmed. This appeal followed.

The dispositive issue on appeal revolves about the proper interpretation of the statutory language: "The provisions of this section are effective for workers who retire on or after July 1, 1989." NDCC § 65–05–09.2. Before 1991, Title 65 did not define the word "retire" and both Kallhoff and the Bureau have proffered diametrically opposed definitions.

■ There are several principles that shape our analysis. The interpretation of a statute is a question of law, fully reviewable by this court. *Effertz v. Workers' Comp. Bureau,* 481 N.W.2d 223 (N.D. 1992). The primary objective of statutory construction is to ascertain the intent of the legislature. *Hayden v. Workers' Comp. Bureau,* 447 N.W.2d 489 (N.D. 1989). A statute is ambiguous if it is susceptible to differing but rational meanings. *Souris River Tel. v. Workers' Comp. Bureau,* 471 N.W.2d 465 (N.D.1991). We review the decision of the Bureau, rather than that of the district court. *Holmgren v. Workers' Comp. Bureau,* 455 N.W.2d 200 (N.D.1990).

Kallhoff argues that NDCC § 65–05–09.2 does not apply to him because he "retired" in 1983, when he became permanently and totally disabled and no longer capable of working. He argues that NDCC § 65–05–09.2 should be liberally construed to mean that claimants "retire" only if, on or after July 1, 1989, they reach the age of sixty-five and become disabled. The offset, he says, should apply only to those claimants who first qualify for workers' compensation benefits and social security retirement

benefits on or after July 1, 1989. He argues that because he became disabled before July 1, 1989, the statutory offset does not affect him.

The Bureau argues that Kallhoff's disability in 1983 is not the same as "retirement" because it was not voluntary, and that, instead, Kallhoff "retired" in 1990, upon reaching age sixty-five and becoming eligible for social security retirement benefits. The Bureau argues that, because Kallhoff's social security disability benefits automatically converted into "retirement" benefits at age sixty-five, he "retired" in January, 1990 and is, therefore, subject to the statute's offset.

■ We conclude that the statute is susceptible to either interpretation, both are reasonable and, therefore, the statute is ambiguous. When a statute is ambiguous, it is the duty of this court to ascertain the legislature's intent in enacting the statute. *E.g., Johnson v. Workmen's Comp. Bureau,* 344 N.W.2d 480 (N.D.1984); *Balliet v. Workmen's Comp. Bureau,* 297 N.W.2d 791 (N.D.1980). We may resort to extrinsic aids, such as legislative history, to construe an ambiguous provision. NDCC § 1–02–39; *Souris River,* 471 N.W.2d at 468.

■ Unfortunately, the legislative history of NDCC § 65–05–09.2 is itself ambiguous. But it is helpful in outlining the purpose of the statute and the purpose is important because construing a statute consistent with its purpose is a cardinal rule of construction. *E.g., Van Ornum v. Ottertail Power Co.,* 210 N.W.2d 207 (N.D. 1973). The committee minutes disclose that the legislature intended the statute to achieve cost savings to the fund while protecting the reliance interest of claimants.

The legislative history is replete with estimates of the savings that would be generated by some sort of offset for social security retirement benefits:

"[A]nnual savings will amount to over $900,000 for payments to be made over the lives of the claimants impacted." H.B. 1128 Fiscal Note, Feb. 19, 1989; *See also* H.B. 1128 Fiscal Note Jan. 6, 1989;

"Actual cash savings for the 1989–91 biennium would be approximately $300,-000." *Id.;*

Question by Representative Dorso: "What is the fiscal impact of [the social security offset] if it is taken out?"

Answer: "About $900,000 per year." House Industry, Business and Labor Conference Committee, April 7, 1989, p. 2;

"The original bill's fiscal note was $902,-000, annual $68,000." Representative Dorso's testimony, House Industry, Business and Labor Conference Committee, April 18, 1989, p. 2;

"Sen. Schoenwald's proposal had a fiscal note of $34,657 and an actuarial savings of $455,000." *Id.*

In seeking to save money, the committee expressed its concern over endangering the reliance interest of disabled workers already receiving workers' compensation benefits. Representative Dorso, apparently to reassure skeptical legislators concerned with the effect of the bill upon injured workers, explained, "We're not negatively impacting people already in the fund.... We are not taking something away from somebody." House Industry, Business and Labor Conference Committee Minutes, HB 1128, April 7, 1989, p. 3.

Representative Gerl was also troubled that a worker receiving workers' compensation disability benefits would have them reduced when the worker became eligible for social security retirement benefits. Pat Mayer, the Bureau's Claims Rehabilitation Manager, apparently attempting to dispel Representative Gerl's doubt, explained that the social security offset would apply only to workers who both "retire on or after July 1, 1989 and turn sixty-five." House Industry, Business and Labor Conference Committee Minutes, HB 1128, January 17, 1989, p. 3.

Kallhoff argues that those minutes reflect a legislative intent to protect the expectations of claimants receiving workers' compensation benefits prior to July 1, 1989 by excluding those who did not reach sixty-five and "retire" before July 1, 1989. The Bureau, on the other hand, argues that the legislative record indicates only that the legislature wished to protect the reliance interest of workers already "receiving social security retirement benefits before July 1, 1989," so that these workers "would not suddenly have a drop in income."

█ In resolving this dispute, we rely on our longstanding tradition of construing the Workers' Compensation Act liberally in favor of the injured worker so as to avoid forfeiture and afford relief. *Balliet,* 297 N.W.2d at 794. The purpose of the Workers' Compensation Act is remedial and should be construed liberally in favor of the injured worker. *State v. Broadway Investment Co.,* 85 N.W.2d 251 (N.D.1957). Liberal construction resolves reasonable doubt in favor of the injured worker because it was for the workers' benefit that the Act was passed. *See Morel v. Thompson,* 225 N.W.2d 584 (N.D.1975) [workers' compensation statute exempting agricultural employers liberally construed in favor of employee even though statute arguably exempted apiculture (bee-keeping) employer from participation].

We acknowledge the murkiness of the relevant excerpts of legislative history. The amount of savings the legislature hoped to accomplish by enacting NDCC § 65–05–09.2 remains uncertain. But the fact that it intended to engender such savings is clear. The questions are really at whose expense and when? Representative Dorso's comments, interpreted in favor of the injured worker, indicate an intent to insulate from the burden of the statute's cost-saving purpose those disabled employees who would reach age sixty-five after July 1, 1989. Pat Mayer's explanation supports our interpretation that the statute was not meant to affect recipients of disability benefits who were already in the fund before July 1, 1989. At the very least, Mayer's explanation implies that retiring and reaching age sixty-five do not have to occur simultaneously. Consequently, reaching age sixty-five is not necessarily synonymous with "retirement" under the statute.

We also find support for our interpretation from the definition of "retire" found in NDCC § 65–05–09.3.[3] When a word is defined by statute, that definition may be relied upon in construing the meaning of that word in a similar statute. NDCC §§ 1–02–02 and 1–02–03; *State v. Johnson*, 417 N.W.2d 365 (N.D.1987). While NDCC § 65–05–09.2 does not define "retire", NDCC § 65–05–09.3 does. For purposes of eligibility for disability benefits, NDCC § 65–05–09.3 creates a presumption that an employee has "retired" when the employee has "voluntarily withdrawn from the labor force." So, retirement is linked with the ordinary and commonly understood meaning that retirement is voluntary. However, there is no statutory presumption of retirement for "any employee who is permanently and totally disabled as defined in [Title 65]." While NDCC § 65–05–09.3 was not passed until 1991, it conveys "a clear sense of direction" of the appropriate meaning to bestow upon the word "retire" and we, therefore, give it substantial weight in our resolution of this dispute. *Cf. Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n*, 337 N.W.2d 427 (N.D.1983) [subsequent enactment of a statute which contains "clear sense of direction" is relevant in determining applicable legal principle].

The Bureau wants us to interpret the statute to interfere with Kallhoff's expectation that his benefits would continue as he had anticipated. Kallhoff makes no claim that his benefits are vested, only that he and others similarly situated have relied on receiving unreduced retirement benefits. We agree that offsetting his post-July, 1989 social security benefits would impact on his expectation, something the legislative history suggests the legislature wanted to avoid. Without a clearer statutory expression by the legislature, we refuse to apply the statute to Kallhoff, who was "already in the fund" before July 1, 1989.

Because the legislature was concerned with protecting the reliance interest of claimants and because the legislature did not clearly express an intent to adversely affect disabled workers who qualified for benefits before July 1, 1989, and because disabled workers are not subject to the ordinary prerequisite of voluntariness in deciding when they "retire," we conclude that NDCC § 65–05–09.2 applies only to workers who qualified for workers' compensation disability benefits, and turned sixty-five, on or after July 1, 1989. We thus resolve any doubt in favor of claimants, consonant with our traditional liberal construction of workers' compensation law.

Because Kallhoff was disabled in 1983, he did not "retire" after July 1, 1989. The Bureau erred in concluding he did. Accordingly, we reverse the judgment of the district court affirming the order of the Bureau.

VANDE WALLE and MESCHKE, JJ., VERNON R. PEDERSON, Surrogate Justice, and WALLACE D. BERNING, District Judge, concur.

VERNON PEDERSON, Surrogate Justice, and WALLACE D. BERNING, District Judge, sitting in place of ERICKSTAD, C.J., and JOHNSON, J., disqualified.

---

3. NDCC § 65–05–09.3 says:
    "An employee who has retired or voluntarily withdrawn from the labor force is presumed retired from the labor market and is ineligible for receipt of disability benefits under this title. The presumption may be rebutted by a preponderance of the evidence that the worker:
    1. Is actively seeking employment;
    2. Is available for gainful employment;
    3. Has not rejected any job offer made by a former employer, or other bona fide job offer by another employer; and
    4. Has not provided the employer, upon written request, with written notice of a scheduled retirement date.
    The presumption does not apply to any employee who is permanently and totally disabled as defined under this title."