2001 ND 166

**Darold B. SHIEK, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
Appellee,

and

**North Dakota State University,**
**Respondent.**

No. 20010030.

Supreme Court of North Dakota.

Oct. 16, 2001.

Mark G. Schneider, Schneider, Schneider & Phillips, Fargo, ND, for claimant and appellant.

Andrew L.B. Noah (argued), and Jacqueline S. Anderson, Special Assistant Attorneys General, Nilles, Hansen & Davies, Ltd., Fargo, ND, for appellee.

MARING, Justice.

[¶ 1] Darold B. Shiek appealed from a judgment affirming a North Dakota Workers' Compensation Bureau order denying his claim for further disability benefits. We hold, under the 1991 version of N.D.C.C. 65–05–09.3, claimants who become permanently and totally disabled on or before their intended retirement are eligible for disability benefits after that date, subject to applicable offsets. We reverse and remand with directions to award Shiek appropriate benefits.

I

[¶ 2] In July 1991, Shiek injured his right shoulder during the course of his employment at North Dakota State University ("NDSU"). In August 1991, he filed a claim with the Bureau for workers' compensation benefits, and the Bureau accepted liability for his claim. Shiek had surgery on his right shoulder, did not work from July 31, 1991 through March 2, 1992, and received disability benefits for that time period.

[¶ 3] Shiek returned to work at NDSU in a modified light duty position on March 3, 1992. In August 1992, he filed a separate claim for benefits regarding an injury to his left knee, which he claimed was injured when he hurt his right shoulder in July 1991. The Bureau consolidated Shiek's knee-injury and shoulder-injury claims. Shiek missed work from August 4,

1992, when Dr. David Humphrey operated on his left knee, through August 16, 1992, and Shiek received disability benefits for that time period.

[¶ 4] When Shiek returned to work at NDSU on August 17, 1992, he submitted a resignation, effective on September 25, 1992, the date of his sixty-second birthday. Shiek worked from August 17, 1992 until August 31, 1992, when Dr. Humphrey told him to not work through September 3, 1992, because of swelling in his knee. Shiek saw Dr. Humphrey again on September 21 and was advised not to work the rest of the week. Shiek did not return to work, and in accordance with his earlier submitted resignation, left his job with NDSU on September 25, 1992.

[¶ 5] Shiek received disability benefits for work missed through September 3, 1992, and he sought further disability benefits from the Bureau. The Bureau denied him further benefits, concluding he voluntarily retired from the workforce on September 25, 1992, and he therefore was not entitled to further disability benefits under the retirement presumption in N.D.C.C. 65–05–09.3.

[¶ 6] In *Shiek v. North Dakota Workers Comp. Bureau*, 1998 ND 139, ¶¶ 1, 26, 582 N.W.2d 639, we reversed the Bureau's decision and remanded for further proceedings. We concluded the Bureau erred as a matter of law in deciding that whether Shiek was permanently and totally disabled was irrelevant to the application of the retirement presumption in N.D.C.C. 65–05–09.3. *Shiek* at ¶ 17. We said, once a claimant establishes permanent and total disability by a preponderance of the evidence, the Bureau must prove, without the aid of the presumption in N.D.C.C. 65–05–09.3, the claimant is voluntarily retired from the labor market instead of forced by the disability from the market. *Shiek* at ¶ 21. Because the Bureau did not decide

whether Shiek was permanently and totally disabled, we reversed and remanded for the proper application of the retirement presumption, the admission of any necessary evidence, and the preparation of findings necessary to properly adjudicate Shiek's claim for benefits. *Id.* at ¶ 26.

[¶ 7] On remand, the Bureau decided Shiek was permanently and totally disabled as of September 25, 1992, but he was not entitled to further disability benefits because he voluntarily withdrew from the labor force when he retired effective September 25, 1992. The trial court affirmed the Bureau's decision, and Shiek appealed.

II

[¶ 8] On appeal, we review the Bureau's decision. *Shiek*, 1998 ND 139, ¶ 9, 582 N.W.2d 639. We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violated the claimant's constitutional rights, or the Bureau's rules or procedures deprived the claimant of a fair hearing. *Id.* See N.D.C.C. §§ 28–32–19 and 28–32–21. Our review of the Bureau's findings of fact is limited to determining whether a reasoning mind reasonably could have concluded the findings were proven by the weight of the evidence from the entire record. *Shiek* at ¶ 9. Questions of law are fully reviewable on appeal. *Hopfauf v. North Dakota Workers Comp. Bureau*, 2000 ND 94, ¶ 7, 610 N.W.2d 60.

III

[¶ 9] Shiek argues the Bureau misapplied the retirement presumption and our previous decision in *Shiek*. He argues a claimant who is permanently and totally disabled cannot voluntarily retire from

work and his subjective intent to retire on September 25, 1992, is irrelevant because the Bureau found he was permanently and totally disabled on that date. He argues the Bureau's finding he was permanently and totally disabled on September 25, 1992, dictates, as a matter of law, he did not retire from the labor market voluntarily but was forced from the labor market by his permanent and total disability. Shiek argues he was entitled to further disability benefits because he was permanently and totally disabled on and before the date of his intended retirement. Our consideration of Shiek's arguments requires an examination of our decision in *Shiek* and the law in effect in 1992.[1]

[¶ 10] In *Shiek*, 1998 ND 139, ¶ 10, 582 N.W.2d 639, we explained that, under N.D.C.C. § 65–05–08(2), when a claimant reapplied for disability benefits after their discontinuance, those benefits must be reinstated upon a finding the employee has sustained a significant change in medical condition which results in actual wage loss attributable to the work injury and the employee has not retired or voluntarily withdrawn from the job market as defined in N.D.C.C. 65–05–09.3. 65–05–09.3, N.D.C.C., provides:

> An employee who has retired or voluntarily withdrawn from the labor force is presumed retired from the labor market and is ineligible for receipt of disability benefits under this title. The presumption may be rebutted by a preponderance of the evidence that the worker:

1. Is actively seeking employment;

2. Is available for gainful employment;

3. Has not rejected any job offer made by a former employer, or other bona fide job offer by another employer; and

4. Has not provided the employer, upon written request, with written notice of a scheduled retirement date.

The presumption does not apply to any employee who is permanently and totally disabled as defined under this title.

[¶ 11] In *Shiek*, 1998 ND 139, ¶ 17, 582 N.W.2d 639, we held the Bureau erred, as a matter of law, in ruling that whether Shiek was permanently and totally disabled was irrelevant to application of the retirement presumption under N.D.C.C. § 65–05–09.3. We said the retirement presumption clearly and unambiguously did not apply to an employee who was permanently and totally disabled. *Shiek* at ¶ 17. We recognized that excluding permanently and totally disabled employees from the retirement presumption was neither absurd nor ludicrous, because "the right of a permanently and totally disabled employee to have disability benefits 'continue into retirement years is built into the very idea of workmen's compensation as a self-sufficient social insurance mechanism.' " *Shiek* at ¶ 17 (quoting *Gregory v. North Dakota Workers Comp. Bureau*, 1998 ND 94, ¶ 18 n. 5, 578 N.W.2d 101).

1. In *Shiek*, 1998 ND 139, ¶ 11 n. 2, 582 N.W.2d 639, we recognized:

> N.D.C.C. 65–05–09.3 (1993) was amended by the Legislature in 1995 and 1997. The 1995 amendment to the statute applies to persons who retire or become eligible for social security or other retirement benefits after July 31, 1995. *See* 1995 N.D. Sess. Laws Ch. 623, § 1. The 1997 amendment was declared to be retroactive to August 1, 1995, and was approved as an emergency measure effective March 13, 1997. *See* N.D. Sess. Laws Ch. 543, §§ 2, 3 and 4. The substance of the 1995 and 1997 amendments is detailed in *Gregory v. North Dakota Workers Compensation Bureau*, 1998 ND 94, ¶¶ 18–20, 578 N.W.2d 101. Because the parties have not raised any issues about the possible effects of the amendments on Shiek's claim for benefits, *see Gregory*, 1998 ND 94, ¶¶ 26–33, 578 N.W.2d 101, we confine ourselves to the pre 1995 version of N.D.C.C. 65–05–09.3.

[¶ 12]   In *Shiek*, 1998 ND 139, ¶¶ 18–26, 582 N.W.2d 639, we also considered both the Bureau's argument Shiek failed to establish he was permanently and totally disabled and Shiek's argument the Bureau was not entitled to the benefit of the presumption because it failed to establish the threshold requirement that he was not permanently and totally disabled.  We rejected Shiek's argument the retirement presumption shifted the burden of proof to the Bureau to establish Shiek was not permanently and totally disabled as one of the threshold requirements giving rise to the presumption.  *Shiek* at ¶ 21.  We said:

> It would be illogical to require a claimant to prove he or she is totally disabled in order to qualify for benefits for temporary total or permanent total disability under N.D.C.C. 65–05–09, rather than partial disability under N.D.C.C. 65–05–10, but not to have to prove total disability for purposes of N.D.C.C. 65–05–09.3 (1993).  We conclude once the claimant has established by a preponderance of the evidence that he or she is totally and permanently disabled, the Bureau must prove, without the aid of a presumption, the claimant is retired from the labor market.  In other words, if the claimant demonstrates he or she is permanently and totally disabled, the burden shifts to the Bureau to prove the claimant is not permanently and totally disabled or that the claimant retired from the labor market voluntarily, rather than having been forced from that market by the disability, if the Bureau seeks to hold the claimant ineligible for further benefits.  The claimant must still establish his or her disability, as any claimant must do, to qualify for benefits.

*Shiek* at ¶ 21.

[¶ 13]   We concluded the Bureau's finding Shiek voluntarily retired on September 25, 1992, in accordance with his long-standing plan to retire was supported by a preponderance of the evidence.  *Shiek*, 1998 ND 139, ¶ 22, 582 N.W.2d 639.  We said, however, that finding did not give rise to the presumption of retirement under N.D.C.C. 65–05–09.3, if Shiek was permanently and totally disabled.  *Shiek* at ¶ 23.  We said the Bureau did not make a finding about whether Shiek was permanently and totally disabled, and we declined to imply a finding on the issue or decide it on the record as a matter of law.  *Id.* at ¶¶ 23–24.  We, therefore, reversed and remanded to the Bureau for "proper application of the retirement presumption law, the admission of any necessary evidence, and the preparation of findings necessary to properly adjudicate Shiek's claim for benefits."  *Id.* at ¶ 26.

[¶ 14]   On remand, the Bureau found that, as of September 25, 1992, Shiek was permanently and totally disabled as defined by N.D.C.C. 65–01–02(12)(a).  The Bureau also determined Shiek voluntarily withdrew from the labor force and retired from the labor market effective September 25, 1992, in accordance with his long-standing plans to retire at age 62 and not because of his work-related injury.  The Bureau concluded it had met its burden of proving Shiek retired from the labor market voluntarily rather than having been forced from the market by a disability and he was ineligible for further benefits under N.D.C.C. 65–05–08(2).

[¶ 15]   Under our workers' compensation law, a permanently and totally disabled employee generally is entitled to disability benefits "during such disability."  N.D.C.C. 65–05–09 (1991).  *See* N.D.C.C. 65–05–09 (2001) ("during that disability").  The definition of disability is broader than lost wages, it "means loss of earnings capacity and may be permanent total, temporary total, or partial."  N.D.C.C. 65–01–02(12) (1991).  *See* N.D.C.C. 65–01–02(15)

(2001). A permanent total disability is permanent in nature and total in character, and is paid to an employee who is not capable of rehabilitation of earnings capacity. N.D.C.C. 65–01–02(12)(a) (1991). *See* N.D.C.C. 65–01–02(26) (2001). A claimant's status as a permanently and totally disabled employee depends on the nature of the injury, the degree of physical impairment, age, education, work history, and vocational rehabilitation potential. N.D.C.C. 65–01–02(12)(a) (1991). *See* N.D.C.C. 65–01–02(26) (2001). In contrast, N.D.C.C. 65–01–02(12)(b) (1991) defined a temporary total disability as total in character but temporary in nature and paid to the employee until maximum medical recovery with work release to any occupation for which the employee is reasonably suited by aptitude, education, experience, or training.

[¶ 16] The applicable statutory scheme contemplates an employee with a temporary total disability can be rehabilitated and returned to the labor market, but an employee with a permanent total disability cannot be rehabilitated and returned to the labor market. The Bureau's finding under those definitions that Shiek's disability was permanent in nature and total in character and that he was not capable of rehabilitation of his earnings capacity on September 25, 1992 when he effectuated his intent to retire is supported by a preponderance of evidence. Although in *Shiek*, 1998 ND 139, ¶ 17, 582 N.W.2d 639, we said the retirement presumption in N.D.C.C. 65–05–09.3 clearly and unambiguously did not apply to a permanently and totally disabled employee, we did not consider the effect of an intended retirement on the benefits of an employee who became permanently and totally disabled before the actual date of retirement.

[¶ 17] The interpretation of a statute is a question of law which is fully viewable by this Court. *Shiek*, 1998 ND 139, ¶ 16, 582 N.W.2d 639. The primary purpose of statutory construction is to ascertain legislative intent. *Id.* In ascertaining legislative intent, we look first at the words used in the statutes, and we give those words their ordinary, plain-language meaning. *Id.* If a statute is clear and unambiguous on its face, we will not disregard the letter of the statute under the pretext of pursuing its spirit, because legislative intent is presumed clear from the face of the statute. *E.g., County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985). If, however, the language of a statute is ambiguous or of doubtful meaning or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. *Id.* We construe statutes to avoid absurd and ludicrous results, and if possible, to give meaning to all provisions of a statutory scheme. *Id.* A statute is ambiguous if it is susceptible to differing, but rational, meanings. *Jorgenson v. Agway, Inc.*, 2001 ND 104, ¶ 5, 627 N.W.2d 391.

[¶ 18] The Legislature enacted the retirement presumption in 1991 N.D. Sess. Laws ch. 714, § 46. Under the law in effect before 1991, a permanently and totally disabled claimant's disability benefits were subject both to a social security offset under N.D.C.C. 65–05–09.1 if the claimant was eligible for benefits under 42 U.S.C. § 423, and a retirement offset under N.D.C.C. 65–05–09.2 if the claimant was entitled to social security retirement benefits under 42 U.S.C. §§ 402 and 405 and retired on or after July 1, 1989. In *Kallhoff v. North Dakota Workers' Comp. Bureau*, 484 N.W.2d 510, 514 (N.D.1992), this Court held the retirement offset applied only if the claimant both qualified for disability benefits and turned 65 on or

after July 1, 1989. In *Kallhoff* at 514, we concluded "[b]ecause Kallhoff was disabled in 1983, he did not 'retire' after July 1, 1989." In arriving at this conclusion, this Court relied on the definition of "retire" found in N.D.C.C. 65–05–09.3. *Kallhoff* at 514. We reasoned: "[s]o, retirement is linked with the ordinary and commonly understood meaning that retirement is voluntary. However, there is no statutory presumption of retirement for 'any employee who is permanently and totally disabled as defined in [Title 65].'" *Id.* In essence, our decision in *Kallhoff* supports the proposition that a claimant who was permanently and totally disabled before July 1, 1989, could not voluntarily retire after that date.

[¶ 19] Before the retirement presumption was enacted in 1991, our workers' compensation law did not purport to totally preclude or terminate an award of disability benefits to a claimant who reached retirement age or retired or voluntarily withdrew from the labor force. 65–05–09.3, N.D.C.C., was enacted in 1991 N.D. Sess. Laws ch. 714, § 46. Under the 1991 law, the presumption of retirement clearly and unambiguously does not apply to a permanently and totally disabled employee. *See Shiek*, 1998 ND 139, ¶ 17, 582 N.W.2d 639. The question is whether a permanently and totally disabled employee can subsequently "retire or voluntarily withdraw from the labor force" resulting in ineligibility for further disability benefits.

[¶ 20] The 1991 version of N.D.C.C. 65–05–09.3 could be construed to totally preclude a claimant from receiving permanent total disability benefits if the claimant subsequently retires or voluntarily withdraws from the labor force. By definition, however, a claimant who is permanently and totally disabled is not capable of reha-

bilitation of earnings capacity and is effectively unable to do any work, and as we reasoned in *Kallhoff*, 484 N.W.2d at 514, "disabled workers are not subject to the ordinary prerequisite of voluntariness in deciding when they 'retire.'" When harmonized with the definition of permanent total disability and our interpretation of retired in *Kallhoff*, the 1991 version of N.D.C.C. 65–05–09.3 also could be construed to mean claimants who become permanently and totally disabled before an intended retirement are eligible for disability benefits because they are unable to do any work. Either interpretation is reasonable, and we therefore resort to extrinsic aids to construe N.D.C.C. 65–05–09.3. *See* N.D.C.C. 1–02–39.

[¶ 21] The relevant legislative history for N.D.C.C. 65–05–09.3 says, in part:

*Section 6* is a new section that creates a rebuttable retirement presumption. It specifies that those who have retired or voluntarily withdrawn from the workforce are not eligible for disability benefits unless they are permanently and totally disabled as defined under the act. The worker does have the opportunity to rebut this presumption with evidence that they are actively seeking employment, are available for employment, have not rejected bona fide job offers and have not provided their employer with written notice of a scheduled retirement date.

*Hearing on S.B. 2246 Before Senate Judiciary Committee*, 52nd N.D. Legis. Sess. (Feb. 4, 1991) (prepared testimony of Pat Mayer, Assistant Claims and Rehabilitation Manager of Workers' Compensation Bureau).[2]

[¶ 22] The legislative history for the 1991 version of N.D.C.C. 65–05–09.3 says

---

**2.** During the 1991 legislative process, S.B. 2246 was combined with S.B. 2206, which

ultimately became the retirement presumption in 1991 N.D. Sess. Laws ch. 714, § 46.

persons "who have retired or voluntarily withdrawn from the workforce are not eligible for disability benefits unless they are permanently and totally disabled." A corollary of that statement is claimants who are permanently and totally disabled are eligible for disability benefits even though they subsequently effectuate an intended retirement.

[¶ 23] Other courts have recognized that permanent disability benefits do not terminate on retirement. *See Hilyard Drilling Co., Inc. v. Janes*, 462 So.2d 942, 943 (Ala.Civ.App.1985); *Bailey v. Litwin Corp.*, 780 P.2d 1007, 1010–11 (Alaska 1989); *Franco v. Industrial Comm'n*, 130 Ariz. 37, 633 P.2d 446, 449–50 (1981); *State Comp. Ins. Auth. v. Industrial Claim Appeals Office*, 786 P.2d 423, 425 (Colo.Ct. App.1989); *Brown v. City of Wichita*, 17 Kan.App.2d 72, 832 P.2d 365, 368–69 (1992); *Inland Steel Co. v. Terry*, 464 S.W.2d 284, 285 (Ky.1970); *Reves v. Kindell's Mercantile Co., Inc.*, 793 S.W.2d 917, 922–23 (Mo.Ct.App.1990); *Skrukrud v. Gallatin Laundry Co., Inc.*, 171 Mont. 217, 557 P.2d 278, 281–82 (1976); *State ex rel. Baker Material Handling Corp. v. Industrial Comm'n*, 69 Ohio St.3d 202, 631 N.E.2d 138, 144–49 (1994); *Krugen v. Beall Pipe & Tank Corp.*, 19 Or.App. 922, 529 P.2d 962, 963 (1974).

[¶ 24] In *State ex rel. Baker*, 631 N.E.2d at 146–47, the Ohio Supreme Court explained that the rationale for not terminating permanent total disability benefits on retirement was those benefits were designed to compensate an injured employee for impairment of earnings capacity and not for actual wages lost. *See also Franco*, 633 P.2d at 449–50; *State Comp. Ins. Auth.*, 786 P.2d at 425; *Brown*, 832 P.2d at 368–69; *Inland Steel*, 464 S.W.2d at 285. Citing *Inland Steel*, 464 S.W.2d at 285, the Ohio Supreme Court said "[t]he advent of retirement, regardless of how imminent at the time of disability, will not extinguish or limit the claimant's right to PTD compensation. If an otherwise compensable injury or disease has rendered the claimant unfit for sustained remunerative employment, 'what he actually intended to do with his time in the future is immaterial, and the acceptance of retirement benefits is irrelevant.'" *State ex rel. Baker* at 147. The court held that if an employee retires before becoming permanently and totally disabled, the employee is precluded from receiving permanent total disability benefits only if the retirement is voluntary and constitutes an abandonment of the entire job market; however, if the employee retires after becoming permanently and totally disabled, the employee is not precluded from receiving permanent total disability benefits regardless of the nature or extent of the retirement. *Id.* at 148.

[¶ 25] Professor Larson also explains that permanent total disability benefits do not terminate on retirement:

> If permanent disability or death benefits become payable, they are not limited to the period of what would have been claimant's active working life. In other words, if a person becomes totally permanently disabled at age twenty-five, and is awarded benefits for life, they obviously do not stop when he or she is sixty-five, but extend on into the period of what probably would have been retirement. This being so, if a person is permanently and totally disabled at age sixty, it is not correct to say that benefits should be based on the theory that his or her probable future loss of earnings was only five years of earnings. The right to have compensation benefits continue into retirement years is built into the very idea of workers' compensation as a self-sufficient social insurance mechanism.

5 *Larson's Workers' Compensation Law* § 93.02[2][f] at p. 93–38 (2001). *See also Shiek,* 1998 ND 139, ¶ 17, 582 N.W.2d 639; *Gregory,* 1998 ND 94, ¶ 18 n. 5, 578 N.W.2d 101.

[¶ 26] The Workers' Compensation Act is remedial legislation, and we construe it to afford relief and avoid forfeiture with the view of extending its benefits to all who fairly can be brought within its provisions. *Ash v. Traynor,* 2000 ND 75, ¶ 8, 609 N.W.2d 96. The 1991 version of our workers' compensation law does not explicitly terminate or preclude permanent total disability benefits upon retirement, defines disability as loss of earnings capacity, *see* N.D.C.C. 65–01–02(12) (1991), authorizes permanent total disability benefits during such disability, *see* N.D.C.C. 65–05–09 (1991), and defines an employee with a permanent total disability as being incapable of rehabilitation of earnings capacity. *See* N.D.C.C. 65–01–02(12)(a) (1991). When those provisions are harmonized to give meaning to each, we conclude the 1991 version of N.D.C.C. 65–05–09.3 does not preclude an employee from receiving permanent total disability benefits if the employee becomes permanently and totally disabled before the employee's intended retirement. The statutory requirement of N.D.C.C. 65–05–08(2)(c) that a claimant has not retired or voluntarily withdrawn from the job market as defined in N.D.C.C. 65–05–09.3 in order to reapply successfully for disability benefits is specifically subject to our interpretation of the definition of "retired" in N.D.C.C. 65–05–09.3. Once an employee is totally and permanently disabled, there no longer exists an option to "voluntarily" retire or withdraw from the labor force. *See Kallhoff,* 484 N.W.2d at 514. However, if an employee manifests an intent to retire on a particular date, in fact retires on that date and then subsequently becomes totally and permanently disabled, the employee could

be said to have retired under the definition in N.D.C.C. 65–05–09.3. To the extent our interpretation of the 1991 version of N.D.C.C. 65–05–09.3 may be contrary to language in *Shiek,* 1998 ND 139, ¶ 21, 582 N.W.2d 639, we decline to apply that language in *Shiek* to an employee who becomes permanently and totally disabled on or before an intended retirement date. We hold, as a matter of law under the 1991 version of N.D.C.C. 65–05–09.3, an employee who becomes permanently and totally disabled on or before the employee's intended retirement date has not "retired or voluntarily withdrawn from the labor force." *See Kallhoff,* 484 N.W.2d at 514.

[¶ 27] Here, Shiek became permanently and totally disabled on or before his intended retirement on September 25, 1992. We, therefore, conclude the Bureau erred as a matter of law in determining he was not entitled to permanent total disability benefits after September 25, 1992, subject to the appropriate offset.

[¶ 28] We reverse the judgment and remand with directions to award Shiek benefits in accordance with this opinion.

[¶ 29] GERALD W. VANDE WALLE, C.J., concurring.

NEUMANN, Justice, concurring specially.

[¶ 30] While Justice Maring makes a strong argument that a workers compensation system should never be permitted to find a permanently and totally disabled worker has voluntarily withdrawn from the labor market, I cannot find such a policy reflected in the statutes that apply in this case. I agree with much of what Justice Kapsner has written about the meaning and interpretation of the applicable statutes, but I cannot agree with her final conclusion regarding the Bureau's findings of fact. I therefore write separately.

[¶ 31] Section 65–05–09.3, N.D.C.C. (1991) says, "An employee who has retired or voluntarily withdrawn from the *labor force* is presumed retired from the *labor market* . . . ." (Emphasis added.) Obviously, those two terms, "labor force" and "labor market," must mean two different things as the legislature has used them in this statute, even though they might appear to be synonymous. Section 65–05–09.3 goes on to say this presumption can be overcome if the worker shows four things which, taken together, are evidence the worker really is trying to find another job. From all this, I understand "withdrawn from the labor force" to mean "not presently working," and I understand "retired from the labor market" to mean "not interested in working in the future." Boiled down to its essence, 65–05–09.3 says a claimant who is voluntarily not presently working is presumed to be not interested in working in the future, and therefore is ineligible for disability benefits unless he shows he really is trying to find another job.

[¶ 32] Section 65–05–09.3 then goes on to say, "The presumption does not apply to any employee who is permanently and totally disabled as defined under this title." The Bureau has now found that Shiek is permanently and totally disabled. The presumption, therefore, does not apply to him. In *Shiek v. North Dakota Workers Comp. Bureau*, 1998 ND 139, ¶ 21, 582 N.W.2d 639 ("*Shiek I*"), we stated, "once the claimant has established by a preponderance of the evidence that he or she is totally and permanently disabled, the Bureau must prove, without the aid of a presumption, the claimant is retired from the labor market."

[¶ 33] According to Justice Maring, this statement is incorrect. Justice Maring argues once the claimant has established total and permanent disability, the Bureau

doesn't get a chance to prove anything more. According to Justice Kapsner, not only is the statement correct, but the Bureau in this case has met its burden of proof. With the greatest respect, I must disagree with both of my colleagues.

[¶ 34] Justice Maring, as I have said, finds an admirable policy reflected in the statutes. Unfortunately, I am not convinced, and therefore cannot agree, that the statutes declare the policy she finds articulated there. Justice Kapsner quite correctly, I believe, states at ¶ 47 that "[r]etirement from a specific job is insufficient to show removal from the labor market because the presumption does not apply." Without the presumption, retirement or voluntary withdrawal from the *labor force* does not, standing alone, prove retirement from the *labor market*. But Justice Kapsner then refers to and relies on the Bureau's conclusion that Shiek had retired from the labor market, a conclusion the Bureau has based on Shiek's long-standing plans to retire from this particular job. That, I would argue, is exactly the presumption the legislature has said the Bureau may not use in this case. The Bureau has concluded Shiek has retired from the labor market because the Bureau has found he had withdrawn from the labor force-retired from a specific job. The Bureau has applied the presumption to reach its conclusion. Reviewing the Bureau's findings I note many references to Shiek's plans to retire from this specific job. I find none saying Shiek expressed an intent to quit working entirely.

[¶ 35] Perhaps some confusion was caused by paragraph 22 in *Shiek I*. The first sentence states, "The Bureau's finding that Shiek voluntarily retired on September 25, 1992, in accordance with his long-standing plan to retire is supported by a preponderance of the evidence."

*Shiek I,* 1998 ND 139, ¶ 22, 582 N.W.2d 639. As the author of that opinion, I admit that sentence may be somewhat unclear and possibly misleading. It was intended as a reference to Shiek's retirement from his particular job, the fact that he had "retired or voluntarily withdrawn from the labor force." It was not a reference to retirement from the *labor market,* a very important distinction under 65–05–09.3. The first sentence of paragraph 23 should have made the distinction clear by saying, "That finding, however, does not give rise to a presumption of retirement from the labor market under N.D.C.C. 65–05–09.3 (1993) if Shiek is permanently and totally disabled." *Shiek I* at ¶ 23. Unfortunately, because of the issue presented in *Shiek I,* that distinction was obscured when the opinion immediately went on to discuss the lack of a clear finding that Shiek was permanently and totally disabled.

[¶ 36] However, despite any short-lived confusion that may have been caused by paragraph 22, a careful reading of section 65–05–09.3 and of the rest of *Shiek I* should have made clear that in the case of a permanently and totally disabled worker something more than a long-standing plan to retire from a particular job was necessary to prove the claimant had retired from the labor market. The Bureau's findings in this case fail to include that something more. I therefore concur in the result reached by Justice Maring.

[¶ 37] William A. Neumann

KAPSNER, Justice, dissenting.

[¶ 38] I respectfully dissent.

[¶ 39] The majority opinion overlooks the plain language of N.D.C.C. § 65–05–08 (1991) and overstates the holdings of this Court in *Kallhoff v. North Dakota Workers' Comp. Bureau,* 484 N.W.2d 510 (N.D. 1992) and *Shiek v. North Dakota Workers*

*Comp. Bureau,* 1998 ND 139, 582 N.W.2d 639 ("*Shiek I* ").

[¶ 40] Under the statutory scheme effective in 1992 an injured claimant with a permanent total disability would ordinarily continue to receive benefits past retirement age subject to certain offsets. That, I agree, is the import of the wording in N.D.C.C. § 65–05–09 (1991), requiring weekly compensation "during such disability."

[¶ 41] But N.D.C.C. § 65–05–09 is clearly and explicitly limited by the provisions of N.D.C.C. § 65–05–08, which states "[i]f the period of total or partial disability is of five consecutive calendar days' duration or more, compensation must be paid for the period of disability *provided that* " certain conditions are met. (Emphasis added). One of those conditions, when disability benefits have been discontinued and the claimant re-applies for benefits, is the "employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3."

[¶ 42] Section 65–05–09.3, N.D.C.C. (1991), provides:

An employee who has retired or voluntarily withdrawn from the labor force is presumed retired from the labor market and is ineligible for receipt of disability benefits under this title. The presumption may be rebutted by a preponderance of the evidence that the worker:

1. Is actively seeking employment;

2. Is available for gainful employment;

3. Has not rejected any job offer made by a former employer, or other bona fide job offer by another employer; and

4. Has not provided the employer, upon written request, with written notice of a scheduled retirement date.

The presumption does not apply to any employee who is permanently and totally disabled as defined under this title.

[¶ 43] The statute establishes a rebuttable presumption that a worker who has retired from the labor force has also removed himself or herself from the labor market, but does not permit the presumption to be applied to a worker who is permanently and totally disabled.

[¶ 44] Section 65–05–09.3, N.D.C.C., supplied a "clear sense of direction" to this Court in *Kallhoff* to interpret the word "retire" even though § 65–05–09.3 was enacted after the injury at issue in the case. *Kallhoff*, 484 N.W.2d at 514. The specific issue in *Kallhoff* was whether N.D.C.C. § 65–05–09.2 applied to *Kallhoff*. *Id.* at 512. N.D.C.C. § 65–05–09.2 (1991) offset federal social security retirement benefits against workers' compensation disability benefits for "workers who *retire* on or after July 1, 1989." [3] (Emphasis added). Kallhoff had been permanently and totally disabled and had been continuously receiving benefits since 1983. *Kallhoff*, at 511. In 1990, when Kallhoff turned sixty-five, the Social Security Administration automatically converted his social security disability benefits into retirement benefits. *Id.* The Bureau argued such conversion made Kallhoff a person who "retir[ed] on or after July 1, 1989." *Id.* at 512.

[¶ 45] This Court held the mere application of federal benefits law did not make Kallhoff a person who had "retired" as required by the statute.

So, retirement is linked with the ordinary and commonly understood meaning that retirement is voluntary. However, there is no statutory presumption of re-

tirement for "any employee who is permanently and totally disabled as defined in [Title 65]."

*Id.* at 514. *Kallhoff* cannot be read to say a claimant who is permanently and totally disabled cannot voluntarily retire. Rather it stands for the proposition that where a statute requires a voluntary action (such as retirement), the requirement is not satisfied by the automatic operation of law over which a person has no control.

[¶ 46] *Kallhoff* is consistent with the later holding of this Court in *Shiek I*, construing N.D.C.C. § 65–05–09.3. This section permits the Bureau to treat a worker who has retired as if that person had removed himself or herself from the labor market, unless the worker introduces sufficient evidence to overcome the presumption. N.D.C.C. § 65–05–09.3. However, the presumption does not apply to a worker who is permanently and totally disabled. *Id.* The statute itself recognizes, as stated in *Kallhoff* and repeated by the majority, that "disabled workers are not subject to the ordinary prerequisite of voluntariness in deciding when they retire." *Kallhoff*, 484 N.W.2d at 514; majority at ¶ 20. Retirement, standing alone, is insufficient to establish that a person has voluntarily withdrawn from the labor market.

[¶ 47] In *Shiek I*, we remanded with the following direction in applying N.D.C.C. § 65–05–09.3:

We conclude once the claimant has established by a preponderance of the evidence that he or she is totally and permanently disabled, the Bureau must prove, without the aid of a presumption, the claimant is retired from the labor

---

**3.** Section 65–05–09.2, N.D.C.C., was amended in 1993 to provide:

This section applies to an employee who becomes entitled to and receives social security retirement benefits after June 30,

1989, or who receives social security retirement benefits that have been converted from social security disability benefits by the social security administration after June 30, 1989.

market. In other words, if the claimant demonstrates he or she is permanently and totally disabled, the burden shifts to the Bureau to prove the claimant is not permanently and totally disabled or that the claimant retired from the labor market voluntarily, rather than having been forced from that market by the disability, if the Bureau seeks to hold the claimant ineligible for further benefits. *Shiek I*, 1998 ND 139, ¶ 21, 582 N.W.2d 639. To qualify for benefits under N.D.C.C. § 65–05–08, a claimant may not have "retired or voluntarily withdrawn from the job market." Retirement from a specific job is insufficient to show removal from the labor market because the presumption does not apply. This, however, does not exclude the possibility that the worker may have voluntarily withdrawn from the labor market for reasons not arising from the disabled condition.

[¶ 48] Given the explicit language of N.D.C.C. § 65–05–08 and § 65–05–09.3, it is inappropriate for this Court to create a rule of law that says a totally and permanently disabled worker is eligible for disability benefits without regard to whether the worker may have voluntarily withdrawn from the labor market for reasons separate from his injured condition. It would be rare, I would presume, for a worker to have a voluntary withdrawal from the labor market under conditions of total and permanent disability, but this is a question of fact.

[¶ 49] The Bureau found:

The greater weight or preponderance of the evidence has clearly demonstrated that the claimant, Darold Shiek, voluntarily resigned and retired from the labor market effective September 25, 1992, which was the date of his 62nd birthday. This voluntary action was done in accordance with plans that the claimant had made years before to retire

upon reaching the age of 62. This decision was not based upon ... his work-related injuries. A preponderance of the evidence has shown, without the aid of the retirement presumption, that the claimant voluntarily retired from the labor market in September of 1992 rather than having been forced from the market by any disability. As such, the claimant is ineligible for further benefits.

[¶ 50] Given the extensive recitation of evidence on which this finding is based, I would not hold that this finding is unsupported by the record. I would affirm.

[¶ 51] DALE V. SANDSTROM, J., concurs.